161 N.J. Super. 206 (1978)
391 A.2d 552
EVELYN BARTHOLOMEW HARMON, PLAINTIFF-APPELLANT,
v.
LESTER A. HARMON, JR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1978.
Decided July 28, 1978.
*207 Before Judges FRITZ, BOTTER and ARD.
Mr. Jeffrey Simms argued the cause for the appellant (Messrs. Rudd, Simms & Grillos, attorneys).
Mr. S. Herman Cohen argued the cause for the respondent.
PER CURIAM.
Plaintiff Evelyn Bartholomew Harmon appeals from that portion of the final judgment of divorce dealing with equitable distribution. On this appeal her contentions are:
*208 A. The personal injury award received by plaintiff-appellant as a result of an automobile accident in which defendant-respondent was the tortfeasor should be exempt from equitable distribution.
B. The award of thirty-five percent of the personal injury recovery to the defendant-respondent was excessive and constitutes an abuse of discretion by the trial court.
A brief review of the undisputed facts is necessary to fully appreciate our determination of this cause. The parties were married on May 10, 1941 in Bloomfield. New Jersey. The issue of this marriage are emancipated. During most of the marriage the husband worked as a cash register repairman, and the wife, although working during the early years of the marriage as a secretary, was primarily a homemaker responsible for the care of the home and the two children of the marriage.
On July 28, 1972 the wife, while a passenger in a motor vehicle operated by her husband, was seriously injured as a result of a collision with another vehicle. Her injuries required hospitalization and an operation. The operation took place some time in June 1974.
Mrs. Harmon filed a negligence action against her husband and the driver of the other car shortly after her operation. There was no per quod count by the husband. The negligence action was settled for $66,000. The insurance carrier for each side contributed equally. Mrs. Harmon realized the net amount of approximately $42,000. Payment was received on or about December 12, 1974.
Mr. Harmon left his wife about July 8, 1974. The complaint for divorce was filed on August 7, 1975, some 13 months after the desertion. Judgment of divorce was entered on January 26, 1977; however, the trial judge held under advisement the question of equitable distribution. Each party was ordered to file a summary of assets and a memorandum of law. On April 19, 1977 the judge filed a letter opinion ordering distribution. A judgment consistent with that opinion was filed on May 11, 1977.
*209 The trial judge distributed the property as follows:

 To Defendant
 Checking account $ 200.00
 Stocks jointly held 3,651.21
 1 cemetery plot 300.00
 Automobile 900.00
 Furniture in his possession 200.00
 Cash from bank accounts 14,464.53
 __________
 Total $19,715.74
 To Plaintiff
 1 cemetery plot $ 300.00
 Furniture in her possession 1,000.00
 Cash from bank accounts 35,972.55
 __________
 Total $37,272.55

In explaining his order of distribution, the judge stated:
The above allocation gives to each party their personal possessions plus one of the cemetery plots. In addition the Husband will have possession of the stocks formerly jointly held. The $14,464.53 figure given to Defendant represents 35% of the Plaintiff's accident recovery. Plaintiff retains 65% of the accident recovery plus the $9,109.84 formerly in account number XX-XXXXX. Since Plaintiff has already had the use of that $9,109.84, her net award will be $28,162.71.
The trial judge held that the settlement monies from plaintiff's motor vehicle accident was a marital asset subject to equitable distribution in accordance with N.J.S.A. 2A:34-23. We agree.
In DiTolvo v. DiTolvo, 131 N.J. Super. 72 (App. Div. 1974), we held that a cause of action for personal injuries resulting from an accident occurring during the marriage is marital property for distribution purposes. Our holding was cited with approval in Kruger v. Kruger, 73 N.J. 464 (1977). In holding disability benefits to be subject to marital distribution, the court said in Kruger:
* * * Furthermore, there does not appear to be any reason to justify a difference between receipt of these payments from a lump *210 sum award, including damages for permanent injury, arising out of a negligence action, Di Tolvo v. Di Tolvo, 131 N.J. Super. 72 (App. Div. 1974), which is properly classifiable as property subject to equitable distribution. The statute contemplates that the property which is acquired during the marriage shall be subject to equitable distribution, irrespective of the reason for the payment. * * * [at 472]
Plaintiff's argument that the judge erred in allowing "the tort-feasor spouse to reap the benefits of the injured spouse's ward" does not square with the facts. The record clearly indicates that the money in question was the result of a settlement without a judicial determination of fault. We need not pass upon the question of the husband's entitlement to equitable distribution upon an adjudication of his negligence. Plaintiff's reference to the South Carolina litigation is not properly before us. We have searched the record and find no reference to it. It will not be considered. Wallach v. Williams, 52 N.J. 504 (1968). Plaintiff next contends that assuming, arguendo, the personal injury settlement is subject to distribution, the apportionment which distributes 35% of the settlement to the husband is disproportionate and inequitable. In DiTolvo, supra, the uninjured wife received only 20% of the recovery in the negligence action. She received this percentage even though "she `did live through' the results of her husband's accident." 131 N.J. Super. at 83.
In contrast with DiTolvo, Harmon left his wife while she was recuperating from her operation. Her injury and operation were extremely serious, and apparently her disability is permanent. In addition, we do not know whether the trial judge considered the possibility or probability of a recurrence of physical difficulties which might entail additional medical expense or disability.
Although our eyebrows are figuratively raised over the seemingly generous percentage of the settlement distributed to the husband, we cannot evaluate it for two reasons. The trial judge failed to make findings of fact or indicate the basis of his conclusions. He simply stated:
*211 Keeping in mind the guidelines established in Painter, supra for equitable distribution, the Court orders the following distribution: * * *.
Incorporating the criteria of Painter v. Painter, 65 N.J. 196 (1974), by reference does not assist an appellate tribunal in examining a claim of abuse of judicial discretion. Painter lists with approbation 13 criteria used by the trial court as well as four criteria of § 307 of the Uniform Marriage and Divorce Act. The court went on to say (at 212) that "These factors are obviously intended to be illustrative and not exhaustive." Obviously all of the criteria in Painter are not relevant to the facts of this case. In addition, we lack knowledge of what pertinent facts the trial judge applied to the criteria. As we noted in Reiser v. Simon, 63 N.J. Super. 297 (App. Div. 1960):
* * * A trial judge must be explicit in his recital of the evidence and in his factual findings and must so correlate them to his legal conclusions that * * * the judgment entered manifestly appears to be undergirded by legal proof of substantial probative value and by specific factual findings thereon. * * * [at 300-301]
Secondly, we are unable to consider the propriety of the percentage of distribution because specific property which appears to be eligible for distribution was not included as marital assets. In Rothman v. Rothman, 65 N.J. 219, 232 (1974), it was held:
In receiving and considering evidence designed to equip him to make an equitable distribution of marital assets, a trial judge enters upon a three-step proceeding. Assuming that some allocation is to be made, he must first decide what specific property of each spouse is eligible for distribution. Secondly, he must determine its value for purposes of such distribution. Thirdly, he must decide how such allocation can most equitably be made.
The evidence in this case reveals that the husband receives employee benefits of $469 a month and Social Security benefits of $308 a month (he pays $140 a month *212 alimony). In addition, Mrs. Harmon receives disability benefits of $130 a month. In Kruger v. Kruger, supra, it was held that all personal property, tangible and intangible, in which a spouse acquires an interest is includable as property available for equitable distribution. It specifically held that the husband's retirement pay and disability benefits were "property" "legally and beneficially acquired" during marriage and subject to equitable distribution upon divorce. We discern no basis to exclude from distribution the aforementioned employee benefits, social security and disability benefits of both parties. Including these items in the equitable distribution process will undoubtedly affect the final determination.
Accordingly, the matter is remanded in order that all marital assets are marshaled and included in the order of distribution. Furthermore, the distribution should be made in accordance with the criteria set down in Painter as well as any additional factors the trial judge considers pertinent.
We note an ambiguity in the record. In his opinion the trial judge refers to an item of $9,109.84 which he indicates was formerly in account number XX-XXXXX. He states, "Since Plaintiff has already had the use of that $9,109.84, her net award will be $28,162.71." The record is not clear as to whether this is a portion of the settlement monies or jointly-owned marital assets which were spent prior to the distribution. Regardless, if this be a dissipated asset of the marriage before equitable distribution, we question its inclusion. A plenary hearing with oral testimony will eliminate questions of this nature. See Hallberg v. Hallberg, 113 N.J. Super. 205 (App. Div. 1971).
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
BOTTER, J.A.D. (concurring).
I concur in the remand. The treatment of the disability pension in Kruger v. Kruger, 73 N.J. 464 (1977), and its express approval (at 472) of *213 the holding in Di Tolvo v. Di Tolvo, 131 N.J. Super. 72 (App. Div. 1974), make it difficult to say that this court is free to chart its own course in deciding whether a personal injury award or settlement should be treated as a marital asset subject to equitable distribution. It was noted, however, in Kruger (73 N.J. at 472) that the record did not establish that the disability pension was based upon a physical or mental impairment of earning capacity. While this language may inspire the argument that different treatment should be accorded such a disability pension, the literal application of the concept "property acquired during marriage" compels us to accept the dictum of Kruger uncritically. Admittedly, a lump sum received for personal injuries, which may include compensation for past lost wages or for medical expenses paid out of previous assets, is literally "property * * * acquired * * * during the marriage." N.J.S.A. 2A:34-23. Property it is; but what part, if any, should be distributed to the uninjured spouse is the question.
I have no trouble in finding, to the extent it can be identified and isolated, that a portion of the proceeds which represents reimbursement for medical expenses and lost earnings of the injured spouse should be distributable. Without the personal injuries marital assets would not have been expended for medical care and lost wages would have been received by the marriage partners. However, in my view, that part of a settlement or award which represents compensation for pain and suffering and disability should be deemed the personal property of the injured spouse only, not subject to distribution. The principal reason is that the purpose of the payment is to make the injured person whole, to restore that person to the condition which preceded the injury to the extent possible by pecuniary means. The payment simply fills a gap or loss in the physical and mental well being of the injured spouse. It does not represent an accumulated asset or surplus of marital property.
*214 Here Mrs. Harmon was injured in an accident when she was a passenger in a car driven by her husband.[1] She suffered serious injuries. Her verified complaint recites that she underwent an operation for the complete replacement of a knee and that defendant did not share her loss because he left the marital home and never cohabited with her again. There is nothing in the record to indicate whether Mrs. Harmon was left with permanent disability or was likely to suffer pain in the future. But we must presume that the portion of the settlement proceeds which exceeded medical expenses  Mrs. Harmon was not employed outside the home and suffered no wage loss  represents compensation for her injuries and their consequences which are personal to Mrs. Harmon.
This portion of the proceeds received by Mrs. Harmon is the monetary equivalent of her pain and suffering and disability, past and future, as the case may be. It is not a profit to be shared. If Mrs. Harmon had lost an arm, the compensation for that loss would represent the arm. To give a portion of that compensation to the uninjured spouse would deprive Mrs. Harmon of so much of her arm's equivalent. It is one thing to share "property acquired" during the marriage. It is another to share with a divorced spouse that which represents a portion of an injured spouse's health. The literal terms of a statute should not compel this result.
We look to the community property states for guidance, as did the Supreme Court in Kruger, 73 N.J. at 470 and *215 472, n. 1. The principal difference between community property law and common law principles of individual ownership is that in the former both spouses have common ownership of property acquired by either of them through his or her labor and industry. 2 American Law of Property (Moynihan, "Community Property"), § 7.1 at 121 and § 7.5 at 126 (1952). The common law rejected the concept of the conjugal community and developed along the line of individual rights of husbands and, ultimately, of wives. The community property law, which has an ancient European history, viewed marriage as a partnership, recognizing the contribution that each partner makes to the "acquisitions and gains" of their conjugal community. Id. at 121, 126. The 1971 amendments to our Divorce Law, L. 1971, c. 212; N.J.S.A. 2A:34-1 et seq., incorporated into our law this concept of community interest but retained features common to both systems. For example, in both systems property owned by a spouse before marriage remains the separate property of that spouse, including increases in value and exchanges for that property. Painter v. Painter, 65 N.J. 196, 214 (1974); 2 American Law of Property, supra, § 7.11 at 138 and § 7.12 at 141-142. But property acquired during marriage by gift, bequest or devise is distributable property under our law, as interpreted in Painter v. Painter, supra at 214-217, whereas under community property law the emphasis is not upon the time of acquisition but the means of acquisition. Community property law emphasizes the acquisition of property through "onerous title," by the labor, industry and talent of either or both spouses, excluding property received by each as a gift or inheritance. 2 American Law of Property, supra, § 7.9 at 131-132.
The literal language of the statute ought not limit our inquiry to the time when the compensation is received. The purpose for which the property is received should control. Insurance funds, for example, paid to replace property destroyed by fire would remain the separate property of a spouse if the destroyed property had been owned by the *216 spouse before marriage. So, too, we must look at the purpose for which the compensation was received during the marriage to determine if it is subject to distribution. If we view the recovery here simply as the replacement or restoration, so to speak, of the physical and mental health a spouse brought to the marriage, it is like an exchange for property possessed before the marriage. Under both the common law and community property systems an injured spouse should keep funds which replace assets brought to the marriage.
Formerly, most community property states considered proceeds of a personal injury claim received during marriage as community property. See 4A Powell, Real Property (Rev. Ed. 1977), ¶ 624.4 at 733-734. This view has since been rejected in a number of such states. The current majority view is to treat such proceeds as the separate property of the injured spouse except for the portion which represents reimbursement for medical expenses and loss of wages to the community. See Fredrickson & Watson Constr. Co. v. Boyd, 60 Nev. 117, 102 P.2d 627 (Sup. Ct. 1940); Soto v. Vandeventer, 56 N.M. 483, 245 P.2d 826 (Sup. Ct. 1952); Graham v. Franco, 488 S.W.2d 390 (Tex. Sup. Ct. 1972). Two other community property states, Idaho and Washington, have modified their position to provide that the recovery is the separate property of the injured spouse when the other spouse is the tortfeasor. Rogers v. Yellowstone Park Co., 97 Idaho 14, 539 P.2d 566 (Sup. Ct. 1974); Freehe v. Freehe, 81 Wash. 2d 183, 500 P.2d 771 (Sup. Ct. 1972). In Louisiana statutes provide that a wife's personal injury recovery is separate property while a husband's recovery is community property unless he is living apart from his wife through her fault. La. Civil Code, Art. 2402 (1870), as amended, La. Acts 1902, No. 68; La. Civil Code, Art. 2334 (1870), as amended, La. Acts 1962, No. 353, § 1. For a criticism of this distinction, see Note, "Community Property  Husband's Personal Injury Award," 51 Tulane L. Rev. 354, 355 n. 11 (1977). Even when a husband's *217 cause of action arises during the marriage, the recovery is deemed his separate property to the extent that it includes compensation for post-marital loss of earnings. West v. Ortego, 325 So.2d 242 (La. Sup. Ct. 1975).
Only Arizona and California now treat a personal injury recovery exclusively as community property. Heinke v. Munoz, 106 Ariz. 26, 470 P.2d 107 (Sup. Ct. 1970); In re Pinto, 28 Cal. App.3d 86, 104 Cal. Rptr. 371 (D. Ct. App. 1972). But California's law has followed an uneven course. In 1957 the legislature changed the law to provide that all damages recovered for personal injuries are the separate property of the injured spouse. Compare Cal. Stats. 1957, c. 2334, § 1, Cal. Civ. Code Ann. § 5109, with Zaragosa v. Craven, 33 Cal.2d 315, 202 P.2d 73 (Sup. Ct. 1949). The status was altered again in 1968 by statute, but only compensation actually received during the marriage is community property. A cause of action for injuries caused by an accident which took place during the marriage is retained by the injured party upon dissolution of the marriage. See In re Jones, 13 Cal.3d 457, 119 Cal. Rptr. 108, 112-113, 531 P.2d 420, 424-425 (Sup. Ct. 1975). The reason given is that a cause of action for personal injuries cannot be assigned and must vest in the injured party upon divorce. Washington v. Washington, 47 Cal.2d 249, 252, 302 P.2d 569, 571 (Sup. Ct. 1956).
Thus, it can no longer be said, as in Di Tolvo v. Di Tolvo, supra, 131 N.J. Super. at 81, that the majority of community property states treat a personal injury claim as community property. In Soto v. Vandeventer, supra, 56 N.M. at 488-494, 245 P.2d at 829-832, the Supreme Court of New Mexico noted that commentators have uniformly criticized the rule which allows an uninjured spouse to share in that portion of the recovery which represents compensation for pain, disability and loss of future earnings. See also 2 American Law of Property, supra, § 7.16 at 159-160, where the separate property view is called the "sounder view." It is there noted that treating the recovery for personal injuries *218 as community property is inconsistent with the prevailing rule that such property is limited to property acquired by the labors and skills of the spouses or by gift to both spouses. Cf. 4A Powell, Real Property, supra, ¶ 624.4 at 733-734. Some courts have also reasoned that the right of personal security which is invaded is an individual right which should not be shared by the community. Frederickson & Watson Constr. Co. v. Boyd, supra, 60 Nev. at 122, 102 P.2d at 629; Soto v. Vandeventer, supra, 56 N.M. at 492, 245 P.2d at 832.
In my view, treating the personal injury recovery as community property contravenes the common law concern for the individual personality of spouses, where such recovery is intended merely to compensate for an injury to one of the spouses. Moreover, to the extent that the injury compensates for earnings which will be lost after the dissolution of the marriage, a former spouse ought not share in the recovery.
Accordingly, while I concur in the remand for the reasons given by the majority, if I were free to do so I would determine on the remand what part of the proceeds represented the net return of hospital expenses, and I would treat the remainder as the separate property of Mrs. Harmon.
NOTES
[1] Although some courts have considered it a disqualifying factor, see Rogers v. Yellowstone Park Co., 97 Idaho 14, 539 P.2d 566 (Sup. Ct. 1974); Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771 (Sup. Ct. 1972), I do not quarrel with the majority's view that Harmon's claim to equitable distribution should not be denied because his carrier's contribution to the settlement implies tortious conduct on his part. However, there can be no question that a husband ought not share in his wife's recovery for injuries resulting from his willful tort.