180 N.J. Super. 210 (1981)
434 A.2d 639
JANET T. AMATO, PLAINTIFF-APPELLANT,
v.
JOHN J. AMATO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1981.
Decided August 5, 1981.
*212 Before Judges BOTTER, KING and McELROY.
Arnold Koster argued the cause for appellant (Shevick, Ravich, Koster, Tobin, Oleckna & Reitman, attorneys).
Mortimer Katz argued the cause for respondent.
The opinion of the court was delivered by McELROY, J.A.D.
This matrimonial appeal raises but two issues, both of which concern segments of the equitable distribution award effected below pursuant to N.J.S.A. 2A:34-23. The appellant wife first asserts that, assuming the application of this court's decision in DiTolvo v. DiTolvo, 131 N.J. Super. 72 (App.Div. 1974), the trial judge acted arbitrarily in awarding to her husband 25% of her inchoate right to sue for medical malpractice. She next contends *213 that the judge was equally arbitrary in distributing 47% of the future value of the marital home to her while granting 53% of such value to defendant. With respect to both items appellant complains that the trial judge failed to make any findings of fact to justify the "disproportionate" distributions. See Esposito v. Esposito, 158 N.J. Super. 285, 291 (App.Div. 1978); Reiser v. Simon, 63 N.J. Super. 297, 300-301 (App.Div. 1960). There is no cross-appeal. Determination of the first point requires us to consider DiTolvo and the effect, if any, of the reference by analogy to that case in Kruger v. Kruger, 73 N.J. 464, 472 (1977). See the concurring opinion in Harmon v. Harmon, 161 N.J. Super. 206, 212-218 (App.Div. 1978). For the following reasons we reverse and remand.
The parties were married September 14, 1964. Appellant Janet T. Amato filed suit for divorce on January 3, 1979 asserting extreme cruelty. Defendant John J. Amato entered an appearance contesting only the issues of alimony, support, custody, equitable distribution and counsel fees. In a later memorandum defendant set forth the items he contended were subject to equitable distribution. Plaintiff's claim for medical malpractice was not listed in this paper but was asserted as a distributable item prior to trial.
At trial the parties agreed that the marital home had a value of $80,000 upon which a mortgage of $20,000 remained unpaid. The trial record is sparse as to the facts of plaintiff's malpractice claim and nowhere is its exact nature disclosed. Plaintiff stated that no complaint had been filed but she had consulted a lawyer as to this cause of action. The claim appears to stem from a tubal ligation performed during the marriage. Plaintiff testified that she had to undergo four operations, including a colostomy, over a five-month period, and although her bowels are now functioning she has permanent scarring. She stated that in this period she suffered discomfort and pain and incurred an undisclosed amount of medical expense. Plaintiff apparently was unable to work from October 1978 to January 1979 when she returned to employment on a part-time basis. *214 She asserted that during this period defendant refused to let her eat the food at home and made her life unhappy. Defendant testified that in this period immediately preceding the filing of the divorce complaint he ran the household and took care of plaintiff and the children. The trial judge did not attempt to weigh contentions of this sort. The judge, after hearing the testimony, returned from a short recess and, so far as we are here concerned, without stating findings of fact or reasons for his decision, effected equitable distribution of a number of items including the marital home and the malpractice claim.
With respect to the malpractice action the court noted that it was, "a chose in action at this time"; that it "may ultimately be something beneficial"; that it "will be continued to be handled by Mrs. Amato, whose action it is," and that the "net proceeds of that action, if and when anything comes of it, will be divided ... 75% to Mrs. Amato and 25% to Mr. Amato."
The judge ruled that Mrs. Amato and the children should occupy the marital home until the youngest child graduates from high school or discontinues her education before graduation. The judge further held:
And at that time the house will be sold, placed on the market and sold, with the parties having a right of first refusal. I recognize this is a right addressed to each. And if both of them want to exercise it, we may have problems. However, it seems unlikely and I'll set it up that way.
Those proceeds, the net proceeds of the sale when sold  which according to my calculations should be in six years, something like that  will be divided between the parties on the ratio of 47% to the Plaintiff and 53% to the Defendant.
No reason was given by the judge for this allocation nor was any apparent consideration given to the cost of maintenance of the home or payment of the mortgage and the relation of such items to the respective incomes of the parties.

I
It is clear that with regard to the allocation of interests in the medical malpractice claim, the trial judge was adhering to the holdings in DiTolvo v. DiTolvo and Harmon v. Harmon, supra. DiTolvo would permit equitable allocation of any future tort *215 recovery "irrespective of the value of each spouses's claim that would normally be measured in the negligence action itself. That allocation or distribution supersedes and takes the place of any which may later be made in the negligence action or by way of settlement thereof." Id., 131 N.J. Super. at 79-80. We are constrained to disagree with this holding.
The issues as to whether a claim for tortious personal injury of one spouse and the attendant per quod right of the other spouse is equitably distributable under N.J.S.A. 2A:34-23, and the manner in which such distribution shall be effected has received the attention of this court only in DiTolvo and Harmon. Our Supreme Court has not addressed the question directly in any case. In Kruger v. Kruger, supra, Justice Schreiber, by way of dictum, analogized the holding in DiTolvo to an award for military disability benefits, there under consideration, to illustrate that both a lump sum personal injury recovery and disability pension benefits are "properly classifiable as property subject to distribution." 73 N.J. at 472.
The decision in DiTolvo, followed in Harmon, was, perhaps, made complex by the facts. In each case the monies were received in a lump sum settlement, a mixture of payment for (1) personal suffering and disability suffered by the injured spouse; (2) the mutual right to reimbursement of marital assets lost during the marriage consisting of past lost wages and medical payments paid out of previous marital funds, and (3) the per quod right of the uninjured spouse. The court in DiTolvo viewed all of these factors as personal property acquired during the marriage and thus distributable under N.J.S.A. 2A:34-23.
We agree that the items listed in (2) above are of that nature because past lost wages and medical payments made from marital funds should, in fairness, be considered as prior property lost by both partners. When, and if, such sums are recouped from a tortfeasor there is no equitable reason why the recovery of these joint losses should benefit only the spouse who receives them.
*216 The holding in DiTolvo notwithstanding we cannot view the right to sue for personal injury or to sue for loss of consortium as personal property "acquired during the marriage." N.J.S.A. 2A:34-23. Although the concurring opinion in Harmon, influenced by some of the reasoning in DiTolvo, tended to treat compensation for pain and suffering as "the personal property of the injured spouse only, not subject to distribution" (161 N.J. Super. at 213), reconsideration of the basic rationale of DiTolvo indicates that treating such right to compensation as a personal property right misconstrues the nature of the chose in action.
The premise upon which the holding in DiTolvo is based is that N.J.S.A. 2A:34-23 authorizes a court to distribute equitably "the property real and personal, which is legally and beneficially acquired" by the spouses or either of them during the marriage. Id., 131 N.J. Super. at 78. The DiTolvo court reasoned that since Painter v. Painter, 65 N.J. 196, 217 (1974), holds that the word "acquired" is to be used in a comprehensive sense, "we may resort appropriately to the general statutory definition of `personal property' in N.J.S.A. 1:1-2 in resolving the issue before us." The DiTolvo court reasoned that since N.J.S.A. 1:1-2 defined personal property as including "choses in action," necessarily, "a cause for action for personal injuries and consequential damages by reason of an accident occurring during marriage is personal property acquired or owned by the injured person. It is also property owned by his spouse, to the extent of the latter's interest therein." Id. at 78.
In our view of the matter an inchoate personal injury claim, unlike some other rights to sue, is not a property right. The money received is the legal substitute for pain, suffering and the mental and physical disabilities incurred. See Botta v. Brunner, 26 N.J. 82, 92-94 (1958). It is a right, peculiar to the injured person, to seek to be restored, or made whole, as he was before the injury. The right has none of the attributes of property. Thus, the right cannot be sold or assigned prior to *217 judgment and cannot be transferred from an injured debtor to his trustee in bankruptcy in the absence of a state statute which would permit such transfer. See In re Schmelzer, 350 F. Supp. 429 (D.C.S.D.Ohio, E.D. 1972), aff'd 480 F.2d 1074 (6 Cir.1973). The nonassignability of a right of action for tortious personal injury, because it is not a property right, is an ancient concept of the common law recognized in this State. Weller & Lichtenstein v. Jersey City, etc., St. Ry. Co., 68 N.J. Eq. 659, 662 (E. & A. 1905); Goldfarb v. Reicher, 112 N.J.L. 413, 414 (E. & A. 1933); United States Cas. Co. v. Hyrne, 117 N.J.L. 547, 552, 199 A. 778
This attempted assignment of defendant's right of action, or of the moneys to become due when the claim was reduced to judgment was nugatory. It is a firmly established rule that a right of action for personal injuries cannot be made the subject of assignment before judgment, in the absence of a statutory provision to the contrary. Except when otherwise provided by statute, nothing is assignable, either at law or in equity, that does not directly or indirectly involve a right to property. [112 N.J.L. at 414]
In Weller, supra, it was urged that since a statute made such choses in action survivable after death of the injured person, the character of the right was changed from its common law concept. Chief Justice Gummere rejected this contention, holding:
We do not think that the statute appealed to has this effect. It does not attempt to change the character of those rights of action, to transpose them into property rights, and thereby render them assignable to third persons during the lifetime of the party injured; it merely provides that, although not property rights, and therefore not assignable, they shall nevertheless survive the personal representatives of the injured person for the benefit of his estate. [68 N.J. Eq. at 662; emphasis supplied]
The court in DiTolvo noted the cases referred to above and the fact that tort claims for personal injuries are not assignable before judgment, but held that doctrine irrelevant to the issue. The court did not discuss the principle of those cases that a right to sue for personal injury is not an indirect or direct property right. Without further elaboration it merely held that "for purposes of equitable distribution such claims constitute property subject to such distribution."
Clearly, there are choses in action which "directly or indirectly involve a right to property." The doctrine that a personal *218 injury claim is not a property right is firmly embedded in our common law. N.J.S.A. 1:1-2, which defines personal property as including choses in action, without further definition of the types of choses in action intended, in our view of the matter, furnishes no basis for holding that the legislature intended thereby to overturn the common law concept as to personal injury claims and, under settled principles of strict statutory construction, does not require such a result. Carlo v. OkoniteCallender Cable Co., 3 N.J. 253, 265 (1949); Fivehouse v. Passaic Valley Water Comm'n, 127 N.J. Super. 451, 456 (App.Div. 1974). See, also, Sutherland, Statutory Construction (3 ed. rev. 1974) § 61.01 et seq.
Even if the monies eventually realized from a judgment as recompense for personal injury were to be considered as personal property such definition answers but one of two questions that must be considered in effecting a truly equitable distribution. The second determinative inquiry is whether, conceding it to be property, is the chose in action, or the ultimate recovery for pain, suffering and disability, distributable?
Nothing is more personal than the entirely subjective sensations of agonizing pain, mental anguish, embarrassment because of scarring or disfigurement, and outrage attending severe bodily injury. Mental injury, as well, has many of these characteristics. Equally personal are the effects of even mild or moderately severe injury. None of these, including the frustrations of diminution or loss of normal body functions or movements, can be sensed, or need they be borne, by anyone but the injured spouse. Why, then, should the law, seeking to be equitable, coin these factors into money to even partially benefit the uninjured and estranged spouse? In such case the law would literally heap insult upon injury. The uninjured spouse has his or her separate and equally personal right to an action for loss of consortium. Just as there is no equitable reason for that spouse to profit from his or her ex-mate's recompense for suffering, there is no justification for allocation of a share in the right to loss of consortium. The only damages truly shared are *219 those discussed earlier, the diminution of the marital estate by loss of past wages or expenditure of money for medical expenses. Any other apportionment is unfair distribution. We should not strain the intent of N.J.S.A. 2A:34-23 to achieve that kind of result.
We find the reasoning employed in the concurring opinion in Harmon, 161 N.J. Super. at 214-218 persuasive, and we adopt the views there expressed. We draw specific attention to the following as dispositive of the issue:
The literal language of the statute ought not limit our inquiry to the time when the compensation is received. The purpose for which the property is received should control. Insurance funds, for example, paid to replace property destroyed by fire would remain the separate property of a spouse if the destroyed property had been owned by the spouse before marriage. So, too, we must look at the purpose for which the compensation was received during the marriage to determine if it is subject to distribution. If we view the recovery here simply as the replacement or restoration, so to speak, of the physical and mental health a spouse brought to the marriage, it is like an exchange for property possessed before the marriage. Under both the common law and community property systems an injured spouse should keep funds which replace assets brought to the marriage.
Thus, we hold that where one spouse has a claim for personal injury which occurred during marriage, monies realized by way of settlement or judgment from a tortfeasor as compensation for pain, suffering, disfigurement, disability or other debilitation of the mind or body, represent personal property of the injured spouse not distributable under N.J.S.A. 2A:34-23. Likewise, monies realized for a claim of loss of consortium must in fairness be so treated. Losses, such as past wage and medical expenses, which have diminished the marital estate, are distributable when recovered.
The fact that no settlement has been achieved presents no insurmountable procedural problem. The husband can join the wife's suit to assert his right of action if it seems worthwhile. If he does not, the wife's suit can present the lost past wages and medical expense. There is no immutable rule in negligence cases requiring a plaintiff to receive a lump sum verdict encompassing pain, suffering, medical expenses and lost *220 wages. Special jury interrogatories may be utilized to delineate the separate factors of recovery. See R. 4:39-1 and 2. Thereafter, if the divorced spouses cannot agree to a reasonable allocation of the distributable items recovered, application to a matrimonial judge will resolve the dispute including a determination of a pro rata responsibility for attorneys' fees and suit expense. The same procedures can be employed should the matter be settled.
By reason of the foregoing, so much of the judgment below as attempts distribution of appellant's medical malpractice claim is vacated and the matter is remanded for entry of an amended judgment conforming to this opinion.

II
We have previously noted the trial judge permitted plaintiff and the children to remain in the marital home, directed that plaintiff "maintain" it and provided for a 47% distribution to plaintiff of the eventual net sales price. Defendant, who at the future sale will receive 53% of the net sales price, has not appealed and appears content to await the eventual sale for any realization of his monetary interest. We speculate that the judge felt that by this delayed realization procedure both parties will have the benefit of increase, if any, due to inflation, and in these circumstances that would seem equitable. By this method both parents will fulfill their joint duty to provide shelter for the children in the sense of providing a decent home perhaps unavailable if the house were presently sold and plaintiff had to seek other quarters for herself and the children.
We do not suggest that the court should take any other approach as to the marital house. The alternatives presented in Gemignani v. Gemignani, 146 N.J. Super. 278, 284 (App.Div. 1977), and more recently discussed in Daly v. Daly, 179 N.J. Super. 344 (App.Div. 1981), need not be applied to this case, and defendant does not seek such a solution to the problem.
*221 However, we are puzzled by the allocation to defendant of 53% of the future value of this asset. Where a court, as here, for good reason determines that the marital home should not be immediately sold and leaves joint title in the parties, both parties share in the probable increment in future value or the prospect (unlikely in this age) of decrease in value. In such case, barring special reasons not here apparently involved and certainly not articulated, a disproportionate allocation of the future value seems facially inequitable. This is especially so when the resident wife is given the burden, without any future credit, of minor and major maintenance of the house, payment of taxes and upkeep of the mortgage.
On remand the court should consider the relationship of the respective net incomes of the parties, including the support payments, to the cost of ordinary and major maintenance of the premises, and the payment of the mortgage, taxes and other such items necessary to keeping a house. The court should fairly determine which, if any, of such expenditures at the time of future sale must be considered as credits in consideration of the respective total incomes of the parties, including support payments. We do not have sufficient information at hand to attempt to do so. If the wife is to pay the mortgage, it may be equitable to give her a credit against the husband's share of future value. Daly v. Daly, supra.
Because we do not know the basis for this mode of distribution, we are obliged to remand the matter for reconsideration of the allocation of future distributable interests in the marital home. We do not know whether the trial court engaged in the consideration of the criteria set forth in Painter v. Painter, 65 N.J. 196, 211-213, in arriving at this distribution nor the factors that engendered the result. The result, standing alone, gives us no basis for review and instills in appellant no understanding of whether justice has been accomplished. See Harmon v. Harmon, supra, 161 N.J. Super. at 211; Esposito v. Esposito, supra, 158 N.J. Super. at 291. The matter is not financially complex and we can appreciate the trial judge's disregard for formality, *222 but it is necessary that the parties and the appellate court be apprised of the rationale underlying a mode of distribution.
Equitable distribution of other items of property are not the subject of complaint by either party. That being so, we see no need to reopen all other aspects of distribution. Accordingly, we vacate those portions of the judgment below which distributed the wife's personal injury claim and the marital home. We remand the matter for reconsideration and such further proceedings consistent with this opinion as may be appropriate. We do not retain jurisdiction.