GRACE LANDWEHR, PLAINTIFF–RESPONDENT, v. RAYMOND
S. LANDWEHR, DEFENDANT–APPELLANT.

Submitted January 20, 1987—Decided August 1, 1988.

492

*Ralph A. Ferro* submitted a brief on behalf of appellant (*Ferro & Ferro*, attorneys).

*Paula L. Crane* submitted a brief on behalf of respondent (*Elwell & Crane*, attorneys).

PER CURIAM.

This appeal requires us to determine whether all or part of the settlement proceeds that a spouse receives during a marriage for claims arising out of his or her personal injuries constitutes a marital asset subject to equitable distribution pursuant to *N.J.S.A.* 2A:34-23. We hold that the portion of the settlement that is intended to compensate for lost earnings and the medical expenses of the injured spouse is subject to distribution, but the remainder of the settlement, which is intended to compensate for personal pain, suffering, and the mental and physical disabilities of the injured spouse or for the loss of consortium or services suffered by the uninjured spouse, are not distributable.

I

Grace Landwehr and Raymond Landwehr were married in 1959 and have three children. On July 31, 1978, Raymond Landwehr was injured in an automobile accident. As a result he sustained numerous personal injuries and was hospitalized for over a week and out of work for three months. During most of his recuperation, Mr. Landwehr collected weekly disability payments of one-hundred and thirty-eight dollars. (His weekly salary was two-hundred dollars.) All of his hospital and medical bills were paid by insurance.

Throughout his recuperation, Mr. Landwehr's wife, Grace, attended him, took care of their three children, and ran their household. She also worked outside the home. Shortly after his accident, while Mr. Landwehr was in the hospital, Mrs. Landwehr brought an attorney to him to discuss their legal rights with regard to the accident. During the attorney's initial interview with the Landwehrs, Mrs. Landwehr informed him that she wanted to pursue a *per quod* (loss of consortium or services) derivative action in connection with any lawsuit that might be brought. The attorney agreed to pursue all appropriate actions, and effected a settlement with the insurance carrier in May 1980 for twenty-six thousand dollars. No pleadings were ever filed.

The Landwehrs separated in June of 1981. On October 29, 1981, Mrs. Landwehr filed a complaint for divorce. On October 24, 1983, a final judgment of divorce was entered. At that time the court reserved judgment on whether the personal injury settlement was subject to equitable distribution under *N.J.S.A.* 2A:34-23.

Subsequently, the trial court decided that Mrs. Landwehr was entitled to the portion of the personal injury settlement that was intended to cover her *per quod* claim, and to one-half of the portion of the settlement that was intended to cover Mr. Landwehr's lost wages; and that Mr. Landwehr was entitled to keep the remainder of the settlement. The court held that the funds

that had been intended to compensate Mr. Landwehr for his personal injuries were not distributable under *N.J.S.A.* 2A:34–23.

The Appellate Division reversed that judgment. It held that the entire personal injury settlement was marital property subject to equitable distribution. *Landwehr v. Landwehr*, 200 *N.J.Super.* 56 (1985). Thereafter the trial court entered a second order holding that Mrs. Landwehr was entitled to forty percent of the settlement.

Mr. Landwehr appealed that order. He argued that the trial court lacked jurisdiction to make the award;[1] that the award was so excessive that it constituted an abuse of discretion; and that personal injury settlement proceeds should not be subject to equitable distribution under *N.J.S.A.* 2A:34–23. The Appellate Division dismissed the first two contentions as "clearly without merit." And it held that the prior Appellate Division decision in this case, which concluded that all of the settlement proceeds that Mr. Landwehr received were subject to equitable distribution, had become the "law of the case." Thus it refused to reconsider that issue, and affirmed the trial court. The defendant then petitioned this court for certification to determine whether all of the settlement proceeds from the personal injury claim were subject to equitable distribution.

The " 'law of the case' doctrine sometimes requires a decision of law made in a particular case to be respected by all other lower or equal courts during the pendency of that case." *State v. Reldan*, 100 *N.J.* 187, 203 (1985). Under even the most rigorous application of that doctrine this court is not bound by

---

[1]Mr. Landwehr argued that because the first Appellate Division opinion did not explicitly remand the case, the trial court lacked jurisdiction to resume proceedings after that opinion. The second Appellate Division opinion properly explained that even though there had been no express remand, the trial court had been correct to infer a remand order and resolve the parties' rights: "Obviously the written opinion in the first appeal left undisposed the division of the settlement proceeds and thus the trialcourt was again required to exercise original jurisdiction and conduct the further proceedings that it did."

prior opinions issued by lower courts. Moreover, we see no reason to penalize Mr. Landwehr for proceeding before the trial court to determine the specific, practical effects of the first adverse Appellate Division decision before he undertook this appeal. *See generally* Justice Robert L. Clifford, *Civil Interlocutory Appellate Review in New Jersey*, 47 Journal of Law and Contemporary Problems 87, 89 (Summer 1984) (noting that appeals are best taken from final orders after all the stakes in a litigation are clear). Accordingly, we granted certification, 104 *N.J.* 473 (1986); and now reverse the judgment of the Appellate Division.

## II

In 1971, the Legislature amended *N.J.S.A.* 2A:34-23 to provide in cases of divorce for the equitable distribution of marital property. *L.* 1971, *c.* 212, § 8. No legislative history explained what constituted marital property under the statute. Accordingly, the only guideline was the statutory definition of what property was subject to distribution, *viz*, "the property, both real and personal, which was legally and beneficially acquired by [the divorcing parties] or either of them during the marriage." *See Mahoney v. Mahoney*, 91 *N.J.* 488, 495 (1982). Construing that broad definition in *Painter v. Painter*, 65 *N.J.* 196, 217 (1974), we held the legislative intent "to be that *all* property, regardless of its source, in which a spouse acquire[d] an interest during the marriage [was] eligible for distribution in the event of divorce." Specifically, we held that property acquired during the marriage "by gift, or inheritance or *indeed in any other way* would be subject to equitable distribution." *Id.* at 214-15 (emphasis added).

Relying on our expansive definition of property in *Painter*, the Appellate Division decided that claims arising out of personal injuries are subject to equitable distribution under *N.J.S.A.* 2A:34-23. In *Di Tolvo v. Di Tolvo*, 131 *N.J.Super.* 72 (1974), the court held that a husband's cause of action for personal

injuries arising out of an automobile accident was marital property under the statute. The court recognized that there are strong arguments against equitable distribution of such a claim but it felt constrained by "the construction of the 1971 amendment to the divorce act given by *Painter.*" *Id.* at 82. Accordingly, it ruled that when a court distributes marital property incident to a divorce, it should equitably allocate future recovery on personal injury claims, "irrespective of the value of each spouse's claims that would normally be measured in the negligence action itself." *Id.* at 80. Subsequent cases approved and followed the *Di Tolvo* rule. *See, e.g., Harmon v. Harmon,* 161 *N.J.Super.* 206 (App.Div.1978) (holding that settlement monies received during the course of a marriage in satisfaction of a negligence action arising out of personal injuries sustained by the husband are eligible for equitable distribution); *Hughes v. Hughes,* 132 *N.J.Super.* 559 (Ch.Div. 1975) (unliquidated workers' compensation claim for personal injuries subject to distribution).

In *Kruger v. Kruger,* 73 *N.J.* 464 (1977), we determined that military retirement pay and monthly disability benefits were eligible for equitable distribution. We relied on our decision in *Painter* that "all" property acquired during the marriage was eligible for equitable distribution. We did not address the distributability of personal injury claims. However we did, by way of dictum, cite the Appellate Division's decision in *Di Tolvo* for the proposition that lump sum personal injury awards are subject to equitable distribution. *See id.* at 472.

Nevertheless, the *Di Tolvo* rule did not enjoy unanimous approval. In *Harmon, supra,* the concurring opinion agreed with the majority that the portion of an award or settlement received in satisfaction of a personal injury claim that compensates for economic loss, i.e., lost earnings and medical expenses, should be subject to equitable distribution. 161 *N.J.Super.* at 213 (Botter, J., concurring). But it argued that the literal reading to which *N.J.S.A.* 2A:34–23 was subject under *Painter, Di Tolvo,* and *Kruger* produced an unjust and indefensible

result when it compelled an injured party to share money received as compensation for pain and suffering:

> [The] part of a settlement or award which represents compensation for pain and suffering and disability should be deemed the personal property of the injured spouse only, not subject to distribution. The principal reason is that the purpose of the payment is to make the injured person whole, to restore that person to the condition which preceded the injury to the extent possible by pecuniary means. The payment simply fills a gap or loss in the physical and mental well being of the injured spouse. It does not represent an accumulated asset or surplus of marital property. [161 *N.J.Super.* at 213-14 (Botter, J., concurring).]

*Painter, Kruger, Di Tolvo, Harmon,* and *Hughes* all were decided before 1980, when the Legislature amended *N.J.S.A.* 2A:34-23 to provide that "property, real or personal or otherwise, legally or beneficially acquired during [a] marriage by either party by way of gift, devise or intestate succession, shall not be subject to equitable distribution...." *L.* 1980 *c.* 181 § 1.[2] Although relevant legislative history is scarce, both the Senate Judiciary Committee's statement and Governor Byrne's explanation of this amendment express identical reasons for its adoption:

> To permit a compulsory division of the asset between the recipient and his spouse is contrary to the *natural* expectations of the recipient and the giving parent or relative. Since the efforts of neither spouse resulted in the gift, devise or bequest, it need not be regarded as a marital asset under the partnership concept of marriage. [Governor's Statement On Assembly Bill 762 (2nd OCR) (emphasis added).][3]

Thus the legislative history, sparse as it may be, indicates that the Legislature did not intend as expansive an interpretation of "property" as we gave it in *Painter* and *Kruger.* The amendment reflects a legislative policy that some assets may belong to only one spouse, and not both. Accordingly, in our subsequent constructions of *N.J.S.A.* 2A:34-23 we should be

---

[2]Effective date of amendment was December 31, 1980.

[3]The Senate Judiciary Committee Statement is identical to the statement of Governor Byrne quoted above except in lieu of the underlined word *"natural"* the Senate inserted the word *"marital."* *See* Senate Judiciary Committee Statement to Assembly Bill No. 1229.

sensitive to the reasons why a spouse acquires an asset, and the conception that some assets are so inherently personal they may not properly be treated as marital property. Although this Court's prior reading of *N.J.S.A.* 2A:34-23 did not employ this approach, we are not without some judicial antecedents. The concurring opinion in *Harmon* based its thesis on a foresighted appreciation for the purpose of a personal injury award and the lack of marital effort involved in its procurement. Moreover, after the 1980 amendment of *N.J.S.A.* 2A:34-23, the Appellate Division was again faced with the distributability of a claim for personal injuries.

In *Amato v. Amato*, 180 *N.J.Super.* 210 (1981), the wife had a potential malpractice action at the time of her divorce, and the husband wanted to share in the proceeds of it. The court followed the concurrence in *Harmon*. It held that the right to reimbursement of marital assets that were lost because of the personal injuries of one spouse is marital property subject to equitable distribution, explaining that "[w]hen, and if, such sums are recouped from a tortfeasor there is no equitable reason why the recovery of these joint losses should benefit only the spouse who receives them." *Id.* at 215. But the court "[could not] view the right to sue for personal injury or to sue for loss of consortium as personal property "acquired during the marriage." *Id.* at 216. It reasoned that it is unfair to distribute the money received in settlement of these claims because that money represents the legal substitute for pain, suffering, and the mental and physical disabilities endured by the individual spouse, rather than by the spouses jointly.

In the present case, the Appellate Division declined to follow *Amato* because it is inconsistent with dictum in our 1977 decision in *Kruger, supra,* 73 *N.J.* 464. The court did not consider the effect of the 1980 amendment on the issue. Indeed, the "purpose approach" adopted by the Appellate Division in *Amato v. Amato, supra,* 180 *N.J.Super.* at 219, and in the concurring opinion in *Harmon v. Harmon, supra,* 161 *N.J.Super.* at 213, is consistent with the underlying rationale of the

Legislature's treatment of marital assets for purposes of equitable distribution as disclosed by the 1980 amendment to *N.J.S.A.* 2A:34–23.

### III

"Compensating for the noneconomic inequities in life is a task daunting in its complexity," *Lukhard v. Reed,* 481 *U.S.* 368, ——, 107 *S.Ct.* 1807, 1816, 95 *L.Ed.*2d 328, 341 (1987). It is, of course, impossible to cure personal injuries by awarding money damages to the victim. Nevertheless, the inscrutable link between damage awards and the noneconomic losses effected by physical injuries is firmly entrenched in our legal system. *See Botta v. Brunner,* 26 *N.J.* 82, 92–94 (1958). We administrate this imperfect mode of compensation because in most personal injury cases damage awards are the only remedy that we can fashion.

Our acceptance of the translation of corporal inviolability into currency does not blunt our sensitivity to the unique, discrete sufferings of individuals who have been the victims of personal injuries. It is entirely clear that a spouse receives compensation for pain and suffering and physical and mental disabilities for excrutiatingly personal reasons, wholly apart from the labors or efforts of economic transactions of the marital partners. As the Appellate Division stated in *Amato v. Amato, supra,* 180 *N.J.Super.* at 218:

> Nothing is more personal than the entirely subjective sensations of agonizing pain, mental anguish, embarrassment because of scarring or disfigurement, and outrage attending severe bodily injury. Mental injury, as well, has many of these characteristics. Equally personal are the effects of even mild or moderately severe injury. None of these, including the frustrations of diminution or loss of normal body functions or movements, can be sensed, or need they be borne, by anyone but the injured spouse. Why, then, should the law, seeking to be equitable, coin these factors into money to even partially benefit the uninjured and estranged spouse? In such case the law would literally heap insult upon injury.

We agree with the Appellate Division in *Amato* that *N.J.S.A.* 2A:34–23 is not intended to force a victim of personal

injuries to share the proceeds he or she receives for the pain and suffering and disabilities arising out of those injuries. One cannot fail to believe that at the time of the enactment of the 1980 amendment described above if personal injury claims like Mr. Landwehr's had been brought to the attention of the Legislature, it would have exempted them together with gifts and bequests from equitable distribution. Therefore, Mr. Landwehr need not share the portion of his settlement that was intended to compensate for the pain and suffering he endured as a result of his personal injuries.

■■■ Our holding does not denigrate the suffering and struggles that Mrs. Landwehr endured as a result of her husband's accident. Husbands and wives are inescapably and intimately affected by the crises that befall their spouses. Thus the law allows spouses to sue derivatively in order to recover for some of the personal distress they suffer as a result of an injury to their husbands or wives. The *per quod* claim is the logical counterpart of the claim for pain and suffering that accrues to the spouse who is injured in the first instance. As the Court stated in *Amato v. Amato, supra,* 180 *N.J.Super.* at 218:

> The uninjured spouse has his or her separate and equally personal right to an action for loss of consortium. Just as there is no equitable reason for that spouse to profit from his or her ex-mate's recompense for suffering there is no justification for allocation of a share in the right to loss of consortium.

Because the pain and suffering that the *per quod* claim seeks compensation for is just as personal as the pain and suffering at issue in the primary action—albeit usually less severe—we hold that a *per quod* claim is also non-distributable under *N.J.S.A.* 2A:34-23. Hence Mrs. Landwehr need not share the portion of the Landwehr's settlement that was intended to satisfy Mrs. Landwehr's *per quod* claim.

As a *per quod* claimant, Mrs. Landwehr could recover for the "deprivation of her husband's aid, society and conjugal fellowship." *Ekalo v. Constructive Serv. Corp.,* 46 *N.J.* 82, 84 (1965). Under the facts of this case, however, it appears that she could not recover for the emotional distress she suffered

while she encouraged and supported Mr. Landwehr through his recovery. *See Portee v. Jaffee,* 84 *N.J.* 88 (1980) (limiting the circumstances under which an injured party can recover for emotional distress suffered incident to a spouse's physical injury); *see also id.* at 96 n. 6 (noting that when such recovery is available it can be pursued within the context of a *per quod* claim).

We share the dissent's sensitivity to the noncompensable distress that Mrs. Landwehr endured. But that does not prompt us to equate Mr. Landwehr's need for compensation with that of his wife's. An injured party's pain and disabilities and the emotional suffering they engender persist unaffected by the breakup of a marriage. On the other hand, an uninjured party's emotional distress over a spouse's injuries are unlikely to continue with the same intensity after a divorce.

■ Nevertheless, the portion of a personal injury award or settlement that simply reimburses marital assets that were lost because of a spouse's injury should be subject to equitable distribution. Marital income and marital assets, by definition, belong to both marriage partners. Therefore, to the extent that a personal injury causes such income to be lost and such assets to be expended for medical expenses, both partners are entitled to recover. Accordingly, the portion of Mr. Landwehr's settlement that was intended to compensate for his lost wages is subject to equitable distribution. Reimbursed medical expenses likewise would be distributable.[4]

Our holding is supported by the majority of community property states. *See* 4A Powell, Law of Real Property ¶ 625.2(2) at 53–53; *cf. Kruger, supra,* 73 *N.J.* at 470, 472 n. 1 (looking to community property states for guidance). Moreover, numerous equitable distribution jurisdictions have taken the same approach. *See, e.g., Gloria B.S. v. Richard G.S.,* 458

---

[4]There are no medical expenses at issue in this case because Mr. Landwehr's hospital and medical bills were paid by insurance.

*A.*2d 707 (Del.Fam.Ct.1982); *Campbell v. Campbell,* 255 *Ga.* 461, 339 *S.E.*2d 591 (1986); *In re Marriage of Gerlich,* 379 *N.W.*2d 689 (Minn.App.1986), review denied, (Mar. 21, 1986); *Van De Loo v. Van De Loo,* 346 *N.W.*2d 173 (Minn.App.1984); *In re Marriage of Blankenship,* 210 *Mont.* 31, 682 *P.*2d 1354 (1984); *Johnson v. Johnson,* 317 *N.C.* 437, 447, 346 *S.E.*2d 430, 436 (1986); *see also Unkle v. Unkle,* 305 *Md.* 587, 596–98, 505 *A.*2d 849, 854 (1986) (excluding all proceeds from a personal injury action from equitable distribution "even though, in part at least, payment of the claim would produce monies which would replenish marital assets previously diminished through payment of medical expenses and the loss of wages").

■■ We recognize that the method of allocating the components of an award for settlement that was received prior to the distribution of marital assets pursuant to a divorce will be different from the allocation made after a divorce. After a divorce,

[s]pecial jury interrogatories may be utilized to delineate the separate factors of recovery. *See R.* 439–1 and 2. Thereafter if the divorced spouses cannot agree to a reasonable allocation a matrimonial judge will resolve the dispute including a determination of a *pro rata* responsibility for attorneys' fees and suit expense. The same procedures should be employed should the matter be settled. [*Amato, supra,* 180 *N.J.Super.* at 220].[5]

In the case of an award or settlement prior to the parties' contemplation of divorce, the money will almost certainly be unallocated when it is received. Upon the subsequent division of the spouses' property, a matrimonial judge can allocate the lump sum received into the three categories explained above, as the trial court did in this case.

■ We do not expect that the allocation of such awards will present any serious problems. Trial courts are used to

---

[5]In this context we see no reason to distinguish the distributability of an inchoate claim from that of a claim that the parties have already begun to press at the time of the divorce. *Cf. Unkle v. Unkle, supra,* 305 *Md.* 587, 505 *A.*2d 849; *Fries v. Fries,* 288 *N.W.*2d 77 (N.D.1980); *Hurley v. Hurley,* 342 *Pa.Super.* 156, 492 *A.*2d 439 (1985).

allocating and tracing assets in equitable distribution cases. We affirm our holding in *Painter v. Painter, supra,* 65 *N.J.* at 214, that the "burden of establishing such immunity [from equitable distribution] as to any particular asset will rest upon the spouse who asserts it." Accordingly, the injured spouse will have the burden of showing what portion of his or her award represents compensation for his or her pain, suffering, and disabilities, and the uninjured spouse will have the burden of showing what portion of the award represents compensation for his or her loss of services and consortium. To the extent that the parties fail to prove that a portion of the award represents their separate property, it shall be classified as a marital asset subject to equitable distribution.

Accordingly, we reverse the judgment of the Appellate Division and reinstate the trial court's original order, which awarded Mrs. Landwehr the proceeds of her *per quod* claim and one-half of the proceeds of Mr. Landwehr's claim for lost wages, and Mr. Landwehr the proceeds for his pain and suffering and physical and mental disability and one-half of the proceeds of his claim for lost wages.

O'HERN, J., dissenting.

Toward the end of their twenty-two-year marriage, this couple received a twenty-six thousand dollar settlement for personal injury and *per quod* claims that arose from an automobile accident involving the husband. It was a lump-sum settlement without any itemization, and thus presumably covered all aspects of the husband's claim of personal injury and lost wages, as well as the wife's derivative claims. While the husband recuperated, the wife cared for him, worked, and ran the household; the parties stipulated that their attorney in the tort action had assured her that he "would take care of things" concerning her *per quod* claim. *Landwehr v. Landwehr,* 200 *N.J.Super.* 56, 58 (App.Div.1985).

About three years after the accident, the marriage dissolved. Though at trial the parties stipulated that the husband had

received the check, *ibid.*, the record does not disclose whether the money was saved, spent, or invested in other marital assets. We do know, however, that about a year after the money was received the parties separated. Within another six months, Mrs. Landwehr filed a divorce complaint.

"*[A]ll* property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce." *Painter v. Painter*, 65 *N.J.* 196, 217 (1974). "Regarding equitable distribution, this Court has frequently held that an 'expansive interpretation [is] to be given to the word "property." ' " *Mahoney v. Mahoney*, 91 *N.J.* 488, 495 (1982) (quoting *Gauger v. Gauger*, 73 *N.J.* 538, 544 (1977)). In *Mahoney*, we specifically noted, but did not resolve, the differing decisions concerning the inclusion of personal injury claims in the marital estate. 91 *N.J.* at 496 (citing *Di Tolvo v. Di Tolvo*, 131 *N.J.Super.* 72, 80–82 (App.Div. 1974), and *Amato v. Amato*, 180 *N.J.Super.* 210 (App.Div.1981), both of which involved inchoate claims for personal injury). In this case we do not deal with a pending personal injury claim but with the distribution of settlement proceeds received before the marriage was terminated.

No case has held that such proceeds acquired during a marriage are excluded from the marital estate. With but two exceptions, our courts have subjected "a broad range of assets and interests to equitable distribution including vested but unmatured private pensions, *Kikkert v. Kikkert*, 88 *N.J.* 4 (1981); military retirement pay and disability benefits, *Kruger v. Kruger* [73 *N.J.* 464 (1977) ]; [and] unliquidated claims for benefits under workers' compensation, *Hughes v. Hughes*, 132 *N.J.Super.* 559 (Ch.Div.1975)." *Mahoney, supra,* 91 *N.J.* at 495–96 (footnote omitted). The only exceptions to this mandate arise from the 1980 and 1983 legislative amendments that exclude from equitable distribution gifts not from a spouse and inheritances, primarily because it was thought that neither the donor nor the marital partners would have intended these

assets to be included in the marital estate. *See N.J.S.A.* 2A:34–23 (*L.* 1980, *c.* 181, § 1, and *L.* 1983, *c.* 519, § 1). Except for these narrow provisions, I see no indication in that legislation to alter our prevailing policy with respect to the equitable distribution of marital property. Certainly, the expectation of the source of the funds, i.e., the tortfeasor, is of no significance to us in this setting.

It is difficult for me to determine whether the majority is creating a *sui generis* rule requiring the tracing of all personal injury settlements no matter when received or a more generic rule limiting the doctrine of equitable distribution to assets shown to have been earned or acquired in replacement of earned income. I am concerned that the judgment of the Court will reinforce stereotypical or regressive views of the marriage relationship. If the point is that the proceeds of the settlement are applicable only to reconstitute financially the "corporal inviolability" of the injured spouse through currency, *supra* at 500, what can be said of the spouse who wastes assets of body and mind in furtherance of the marital estate? Would the proceeds of that effort represent a conversion of the bodily identity; is that spouse entitled to an increased share of marital assets to reconstitute the wasted body?

All such views are to my mind too metaphysical for the practical realities of modern marriage, which belie any generalization that an accident victim's spouse does not share in the pain and suffering. The endless hours of encouragement and support that make the injured spouse whole again can never be fully repaid by damages awarded under the law of torts. Only the fair sharing inherent in marriage itself should provide such compensation.

In *Mahoney v. Mahoney, supra,* we emphasized that marriage, although "not a business arrangement in which the parties keep track of debits and credits * * *, '[ ] is a shared enterprise, a joint undertaking * * * in many ways [ ] akin to a partnership.'" 91 *N.J.* at 500 (quoting *Rothman v. Rothman,* 65 *N.J.* 219, 229 (1974)). Like every joint undertaking, mar-

riage has "its bounds of fairness." *Ibid.* I would agree, for example, that a victim of quadriplegia who is deserted by a spouse shortly after the recovery of a substantial award should retain a predominant share of that award. But I would leave the determination of the "bounds of fairness" to the sound discretion of the Family Part. Forty percent may represent the appropriate adjustment here, but that is not the real point of this decision.

In sum, I would hold that the liquidated proceeds of the undifferentiated settlement of a personal injury claim received during marriage that represent compensation for all aspects of the claim, including a spouse's derivative claim, should be considered part of the shared enterprise of the marriage, especially when the caring spouse has participated in the course of recovery. I would therefore affirm the judgment of the Appellate Division.

The Chief Justice joins in this opinion.

*For affirmance*—Chief Justice WILENTZ and Justice O'HERN—2.

*For reversal*—Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI and STEIN—5.