220 N.J. Super. 360 (1987)
532 A.2d 265
REGINA WOLFF, AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS-AT-LAW OF FRANKLIN WOLFF, DECEASED, AS ADMINISTRATRIX OF THE ESTATE OF FRANKLIN J. WOLFF, DECEASED AND INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, AND DEBBIE WOLFF, APPELLANT,
v.
MERCER MEDICAL CENTER, DR. WILLIAM A. KRESSLER, NURSE ROSEMARY MILLER, NURSE ANITA AYRES, NURSE ANN HANNAWACKER, NURSE ANN CASTOR AND RECEPTIONIST CAROLE PERDUE J/S/A, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 16, 1987.
Decided October 16, 1987.
*361 Before Judges KING, GAULKIN and GRUCCIO.
Rottkamp & Flacks, attorneys for appellant Debbie Wolff (Robert B. Rottkamp, Jr., of counsel and on the brief).
Tomlin, Clark and Hopkin, attorneys for respondents Regina Wolff, Individually and as Administratrix of the Estate of Franklin J. Wolff, deceased, Keith Wolff and Janice Sitko (William R. Hopkin and Sharon A. Ferrucci, on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
The sole issue on this appeal is the proper distribution of the net proceeds of a wrongful death action among the surviving spouse and three children of the decedent Franklin J. Wolff. The judge who presided over the wrongful death trial, which *362 resulted in a verdict of $327,670, also determined the motion for distribution of the net recovery of $231,881.32.
In determining the motion, the judge considered the arguments of counsel, the trial transcripts and certifications from Debbie Wolff and Regina Wolff, her mother. He ordered distribution of 70% of the net recovery to the surviving spouse and 30% to the three surviving children to be divided equally among them. For the reasons hereinafter given, we reverse this order for distribution and remand for a plenary hearing.
The record reveals the following basically uncontroverted evidence. The decedent's life expectancy as of the time of his death was 19.9 years. Regina Wolff was 53 years old when her husband of 34 years died. Her life expectancy exceeds that of her late husband. The three children of the marriage are Janet Sitko, Keith Wolff and Debbie Wolff.
Janet was 32 years old when her father died. She graduated high school, married at age 18 and has lived in her own home since her marriage. Both she and her husband are employed. She maintained a close relationship with her father who baby-sat for her with varying frequency since 1973. In 1978, Mr. Wolff also helped in painting the interior of the Sitko home.
Keith, 24 years old at his father's death, is married and has one child. He and his wife are employed. He maintained a good relationship with his father who just one week before his death planted a garden for his son.
Debbie was 12 years old when her father died. She was very close to him, received "much attention and affection" from him and states they were "inseparable [sic]." She is now employed as a payroll clerk for the State of New Jersey and earns a minimal income.
There is conflict concerning Debbie Wolff's desire to attend college. She claims she wants to attend college and that her father desired that she obtain a college education; however, she is unable to because she was forced out of her mother's home and must work to support herself. Mrs. Wolff, in a certification *363 to the court, claims this is not so, alleging that Debbie is a poor student who took no college-oriented courses and never expressed an interest in college. She also states her husband never indicated Debbie wanted to attend college. She claims the interest in college developed upon the disputed claim for distribution of the proceeds of the jury verdict. She indicates that her daughter is on her own, of her own volition, and that she disapproves of her lifestyle. Nevertheless, she is amenable to the establishment of a trust fund in an amount fixed by the court provided the fund is dedicated solely for educational purposes.
Appellant contends that the trial court's allocation of funds to the surviving parties was an abuse of discretion and a violation of the provisions of N.J.S.A. 2A:31-4 and the case law thereunder. The latter statute provides, in pertinent part:
The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with education facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered.
Central to the legislative scheme of this statute are the elements of dependency and pecuniary loss. In Turon v. J. & L. Const. Co., 8 N.J. 543 (1952), Justice Heher reviewed the history of the Death Act with reference to dependency and pecuniary loss and concluded:
It follows that the remedy provided by the statute, as thus amended, is not available to an adult child unless he was a dependent of the deceased parent at the time of the parent's death. Damage is not implied from the relationship alone. And pecuniary loss is not in itself enough to bring such a child within the beneficiary category. There cannot be a recovery of the reasonable value of the expectancy unless there be dependency in fact. The dependency of the adult child must be actual, and not legal merely, although partial dependency in *364 substantial degree will meet the statutory criterion. Benefit and dependence are not synonomous [sic] terms. Compare Havey v. Erie R.R. Co., 88 N.J.L. 684 (E. & A. 1916). Dependency in the statutory intendment has reference to maintenance. It is requisite that there be some degree of dependency in this sense or the statutory condition is not met. Occasional gifts or contributions made by the parent to the child do not, without more, establish such dependency as will give rise to a pecuniary interest in the life of the parent essential to a right of action under the statute. (Citations omitted).
It is conceded that here there was no dependency between the adult child and his deceased parent; and the exception therefore is devoid of substance.
This is the sense of the 1948 amendment of section 4. The statute has lately been revised to provide that the recovery shall be for the exclusive benefit "of the persons entitled to take any intestate personal property of the decedent," measured by their pecuniary injuries as a result of the death, and that if "any of the persons so entitled were not dependent on the decedent at his death, the remainder of the persons so entitled shall take the same as though they were the sole persons so entitled," but that if "all or none of the persons so entitled were then dependent on him, they shall all take as aforesaid." Title 2A:31-4, 2A:31-5. [Id. at 559-560].
The determination of who can share in the distribution of the recovery in a wrongful death action such as this requires a two-step procedure. The first requires the determination of such category of survivors who would take personal property through intestate succession. Thereafter, a second category is formed from the above group who were dependents of the decedent. In the event there are any in the second category, i.e., dependents, they take to the exclusion of the survivors in the first group.
It is uncontested that the category of survivors who take personal property consists of decedent's surviving spouse and his three surviving children. Accordingly, we move to the determination of who was dependent upon the decedent Wolff. In Carianni v. Schwenker, 38 N.J. Super. 350 (App.Div. 1955), Judge Conford analyzed the question of who is a dependent under a then version of N.J.S.A. 2A:31-4. In so doing, he raised the dictum of Turon, supra, to ruling case law when he concluded:
As has been seen, the non-dependency of the adult son in that case was conceded and what the court there had to say concerning the statutory requirement of dependency was therefore dictum. Nonetheless a dictum by *365 the Supreme Court is entitled to great, if not, indeed, controlling weight in this court. [Carianni, supra, 38 N.J. Super. at 359].
The court thereafter quoted Turon, supra, essentially as has been quoted above in this opinion.
Judge Conford determined that under the Wrongful Death Act "mere receipt of benefits from the decedent, past or prospective, does not establish dependency," Id. at 360, and that "[d]ependency can unquestionably be based upon services having a pecuniary value and looking towards maintenance." Id. at 362. Dependency based on maintenance is a matter of degree; "[w]e do not believe ... that it must be shown that the surviving claimant is not at all able to maintain himself on his own without the assistance of the decedent, in order to qualify as a dependent." Id. at 361. The dependency referred to by the statute and case law is to be determined as of the date of the wrongful death. Cibulla v. Pennsylvania-Reading Seashore Line, 25 N.J. Misc. 98, 50 A.2d 461 (C.P. 1946).
It is quite obvious to us that both Regina and Debbie Wolff are dependents and entitled to the overwhelming share of the recovery. The analysis of Judge Conford in Carianni, supra, compels this conclusion. Accordingly, on remand the trial judge, in arriving at an equitable determination, should be guided by the teachings of Suarez v. Berg, 117 N.J. Super. 456 (App.Div. 1971). There the Appellate Division upheld the apportionment of a settlement award in a death action equally between the widow and her newborn child. The widow argued for a 90% share for herself and a 10% share for her newborn child. The infant's guardian suggested a one-third share for the child and a two-thirds widow's share. Judge Carton observed:
In N.J.S.A. 2A:31-4 the Legislature directed that the court make a division which results in an equitable apportionment, taking into consideration certain factors designated therein and "any other relevant factors which will contribute to a fair and equitable apportionment * * *." In Jurman, supra [Jurman v. Samuel Braen, Inc., 47 N.J. 586 (1966)] the court observed that "the statute gives the court wide discretion in arriving at a fair and equitable apportionment geared to a particular family situation and the individuals involved," and *366 emphasized that "the court's primary interest should be to assure the child's appropriate support and maintenance." 47 N.J. at 602.
Emphasis on the respective periods of expected dependency of the widow and the child  that of the widow being almost twice that of the child  would argue for the two-to-one ratio in favor of the widow suggested by the guardian ad litem. However, our statute clearly specifies that the age of the dependents (and therefore beneficiaries' relative periods of dependency) is only one of the factors to be considered. It should be noted also that dependency is not the sole basis for measuring damages in a case of this kind. The jury may consider other elements of pecuniary injury, such as loss of the care, guidance and advice of the father during the child's minority. See Frasier v. Public Service Interstate Transp. Co., 244 F.2d 668 (2 Cir. 1957); Meehan v. Central R.R. Company of New Jersey, 181 F. Supp. 594 (S.D.N.Y. 1960). It is to be expected that the parties in negotiation of the settlement of such an action would do likewise. [117 N.J. Super. at 462; footnote omitted].
He also addressed the desirability of a hearing conducted on a plenary basis with a full development of the evidence. Id. at 460. We are in accord with this principle and eschew any distribution of funds upon affidavits except for those situations where there is a full and complete stipulation of facts presented to the court.
What we have said above, however, does not necessarily exclude the remaining siblings who may be entitled to some small share of the fund. It is within this atmosphere of a fair and equitable distribution that the remaining siblings may be considered. To that end, Green v. Bittner, 85 N.J. 1 (1980) is instructive as is the more recent case of Newburgh v. Arrigo, 88 N.J. 529 (1982). In Newburgh, our Supreme Court held that, notwithstanding the fact that a 19-year-old son of the decedent had reached majority, there was a need to determine whether or not he was emancipated and if not, an evaluation of his claim for parental contribution toward the cost of his higher education.
We, therefore, conclude that the surviving spouse and clearly dependent child Debbie Wolff should be the principal beneficiaries and the division of funds should be equitably divided between them with some minimal allocation to the other adult surviving children, who may be minimally dependent, as may be justified at a plenary hearing. Of course, this plenary hearing *367 may be eliminated on remand by the settlement of the issue which has now consumed almost nine years since Franklin Wolff's death. In the event a settlement is not accomplished, the matter should be set down for a hearing within 90 days and promptly concluded.
The allocation of funds by the trial court is vacated in toto and is remanded for a plenary hearing in accordance with this opinion. We do not retain jurisdiction.
Reversed and remanded.