723 A.2d 1231 (1999)
John J. WEIR, Plaintiff-Respondent,
v.
The MARKET TRANSITION FACILITY OF NEW JERSEY, Amgro, Inc. as servicing carrier, Defendants,
and
Liberty Mutual Insurance Company, Defendant-Appellant,
and
Barbara L. Weir, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1999.
Decided February 19, 1999.
*1232 William J. Martin, Westwood, for defendant-appellant (Martin, Gunn & Martin, Westmont, attorneys; Mr. Martin, on the brief).
*1233 Marian I. Kelly, Woodbury, for respondents John and Barbara Weir (Law Offices of William Mackin, Woodbury, attorneys for Barabara Weir. Hoffman, DiMuzio & Hoffman, Franklinville, attorneys for John J. Weir; Ms. Kelly on the joint brief).
Before Judges LONG, WEFING and CARCHMAN.
The opinion of the court was delivered by WEFING, J.A.D.
On December 22, 1992, John Weir was a passenger in a motor vehicle driven by Roxene Caron that was involved in a collision with a vehicle driven by Anthony DeRosa. Weir suffered a number of injuries, the most significant of which was a comminuted fracture of the right humerus that required surgery to repair. Weir's recovery from this fracture was significantly impeded by a post-operative infection; several successive surgeries were required to deal with complications attendant to that infection. Weir, who was fifty-four years of age at the time of the accident, has not recovered full use of his right arm.
At the time of the accident, Weir was employed as a custodian by the Deptford school system. The accident occurred while Weir was discharging his employment responsibilities; his injuries were therefore covered by workers' compensation. Liberty Mutual Insurance Company (Liberty Mutual), the workers' compensation carrier for the Deptford school system, provided workers' compensation benefits to John Weir.
In addition to filing a claim for workers' compensation benefits, Weir also instituted suit against DeRosa, whose vehicle was insured by Ohio Casualty Insurance Company (Ohio Casualty) under a policy with a $300,000 limit. His wife, Barbara Weir, joined in that action and asserted a per quod claim. Caron also filed a claim against DeRosa, and both claims were settled within DeRosa's policy limits, Caron's for $47,500 and the Weirs' for $252,500.
The Weirs' settlement was for a lump sum amount that made no distinction between the claim of John Weir and the per quod claim of his wife Barbara. They signed the same release on December 14, 1994 in favor of DeRosa and his insurer, Ohio Casualty. The release included the following clause:
It is further understood that it is our [i.e., the Weirs] obligation and the obligation of our attorney to compromise or otherwise satisfy in its entirety the pending worker's compensation lien of Liberty Mutual Insurance Company arising out of the payment of worker's compensation benefits by (sic) or on behalf of John J. Weir arising out of the December 22, 1992 accident....
Six days later, on December 20, 1994, John Weir filed a complaint against Liberty Mutual and his wife. In that complaint, Weir alleged that the workers' compensation lien at that time was approximately $100,000 and that he would receive little or no recovery for his injuries if the lien was paid in full after providing for his wife's per quod claim. He sought a declaratory judgment allocating the settlement amount between himself and his wife and determining the amount reimbursable to Liberty Mutual. He also asserted a claim in connection with his PIP benefits; that claim has been resolved and is not involved in this appeal. Liberty Mutual answered and cross-claimed against Barbara Weir. Barbara Weir filed an answer, counterclaim and cross-claim.
The separate pleadings filed on behalf of John Weir and Barbara Weir reveal that they reside at the same address. In addition, they both took the same position in this litigation, i.e., that the amount of the settlement attributable to Barbara Weir's per quod claim is not subject to Liberty Mutual's statutory lien. We note also that Barbara Weir was originally represented in this suit by the attorney who handled John Weir's third-party claim against DeRosa. It is thus inferable that John Weir joined Barbara as a defendant in this law suit to assure the greatest possible net recovery for both rather than because of any marital discord.
Three days after the complaint was filed, on December 23, 1994, John Weir and Barbara Weir executed a Statement of Settlement (prepared by the attorney who had represented John Weir in the liability action and who was now defending Barbara in this *1234 action) that showed a gross settlement of $252,500, costs of $373.39, and a counsel fee of $84,042.20. It approved holding the sum of $67,736.70 in an interest-bearing escrow account for Liberty Mutual's workers' compensation lien and the payment of an additional counsel fee of $5,000 to the attorney representing John Weir in the complaint filed three days earlier against Liberty Mutual and Barbara. John and Barbara Weir acknowledged receipt of the balance of $95,347.71.
It is difficult to escape the impression that there was an attempt to conclude the matter and disburse the funds in the quickest way possible. It may be coincidental but the attorney who prosecuted and settled the Weirs' third-party action was the subject of a disciplinary matter which was argued before the Supreme Court approximately two months after the settlement statement was executed. 140 N.J. 430, 658 A.2d 1264 (1995).[1]
The trial court handled this matter sequentially, concluding first that the portion of the settlement attributable to Barbara Weir's per quod claim was not subject to Liberty Mutual's workers' compensation lien. It then held a hearing to determine which portion of the gross settlement should be allocated to the per quod claim. It concluded that the economic value of John Weir's loss of use of his right arm was $400,000 and that Barbara Weir's per quod claim was worth $80,000. It then attempted to apply those hypothetical values to the Weirs' settlement. Noting that $80,000 was 20% of $400,000, the trial court concluded that 20% of the settlement ($33,616.80) should be allocated to Barbara Weir's per quod claim and thus should not be subject to the workers' compensation lien of Liberty Mutual. It attributed the 80% balance of the net settlement proceeds ($134,467.61) to John Weir.

I.
Liberty Mutual has appealed from the resulting order. We approach the matter somewhat differently than did the trial court or the parties for we are satisfied that the threshold question is whether plaintiff was entitled to declaratory judgment relief in the first instance. Under N.J.S.A. 2A:16-53:
A person interested under a deed, will, written contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.
We have concluded, for the reasons we set forth below, that plaintiff was entitled to a declaratory judgment on the question whether a spouse's per quod award is subject to a workers' compensation lien and that the trial court correctly held that it is not. We have further concluded, however, that plaintiff was not entitled to a declaratory judgment allocating the proceeds of this settlement between himself and his wife. We thus affirm in part and reverse in part.
There are certain fundamental attributes of a declaratory judgment action.
There must be an actual controversy between a plaintiff and a defendant having an interest in opposing a claim. The action must be adversary in character. The controversy must be bona fide....
[Hungerford & Terry, Inc. v. Geschwindt, 24 N.J.Super. 385, 393, 94 A.2d 540 (Ch.Div.1953), aff'd o.b., 27 N.J.Super. 515, 99 A.2d 666 (App.Div.1953).]
There was a clear dispute between John Weir and Liberty Mutual concerning the scope of Liberty Mutual's workers' compensation lien. We are satisfied that John Weir was entitled to obtain "a declaration of rights" pursuant to N.J.S.A. 2A:16-53 to determine whether Liberty Mutual's statutory lien could extend to a spouse's per quod recovery for research has not disclosed a reported New Jersey opinion on the issue.
*1235 Liberty Mutual contends on appeal that the trial court erred by holding that a spouse's per quod recovery is not subject to the workers' compensation lien imposed by N.J.S.A. 34:15-40 ("section 40 lien") upon the proceeds of a recovery received by an injured employee against a third-party.
That statute provides in pertinent part: Where a third person is liable to the employee or his dependents for an injury or death, the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damages therein. In the event that the employee or his dependents shall recover and be paid from the said third person or his insurance carrier, any sum in release or in judgment on account of his or its liability to the injured employee or his dependents, the liability of the employer under this statute thereupon shall be only such as is hereinafter in this section provided.

* * *
(b) If the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fee as hereinafter defined.
(c) If the sum recovered by the employee or his dependents as aforesaid is less than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be liable for the difference, plus the employee's expenses of suit and attorney's fee as hereinafter defined, and shall be entitled to be reimbursed, as hereinafter provided for so much of the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents as exceeds the amount of such difference plus such employee's expenses of suit and attorney's fee.
The strong public policy that undergirds a section 40 lien is the prevention of a double recovery. An injured employee is entitled to be compensated for injuries sustained but is not entitled to be compensated twice for those injuries. Frazier v. New Jersey Mfrs. Ins., 142 N.J. 590, 597, 667 A.2d 670 (1995); Schweizer v. Elox Div. of Colt Indus., 70 N.J. 280, 287, 359 A.2d 857 (1976) (explaining that an employee is "guaranteed recovery for his common-law damages against contributing third-party tortfeasors or for his [workers'] compensation award, whichever is greater, but he may not duplicate these recoveries"); Montedoro v. City of Asbury Park, 174 N.J.Super. 305, 308, 416 A.2d 433 (App.Div.1980) (positing that "[a]n employee injured in a worker-related automobile accident by an insured tortfeasor cannot, under N.J.S.A. 34:15-40, retain both workers' compensation benefits and the fruits of the common law damage action against a third-party tortfeasor"). Our public policy against a double recovery is so strong that a section 40 lien is valid even if the recovery in the third-party action is insufficient to compensate the injured employee fully for all injuries received. Frazier, supra, 142 N.J. at 602, 667 A.2d 670.
In support of its contention that the portion of the settlement proceeds attributable to Barbara Weir's per quod claim is subject to its section 40 lien, Liberty Mutual stresses the derivative nature of a per quod claim and argues that under Danek v. Hommer, 9 N.J. 56, 87 A.2d 5 (1952), per quod claims are subsumed within the framework of the workers' compensation statute. We are not persuaded.
It is true that cases speak of the derivative nature of a per quod claim.
A per quod claim is only maintainable by reason of a spouse's personal injury. It depends upon and is incidental to the personal injury action. Our courts have characterized it as a derivative claim, not a separate cause of action. Such claims *1236 must be joined with the primary claim in a single action. The derivative claim can rise no higher than the personal injury claim of the other spouse.
[Tichenor v. Santillo, 218 N.J.Super. 165, 173, 527 A.2d 78 (App.Div.1987) (citations omitted).]
Although a per quod claim may be derivative and dependent, it also represents a claim for damages personal to that spouse. Hauck v. Danclar, 262 N.J.Super. 225, 227-28, 620 A.2d 479 (Law Div.1993) (concluding that a spouse pursuing a per quod claim is entitled to be represented by separate counsel). Moreover, the personal nature of the damages recoverable under a per quod claim precludes those damages being subject to equitable distribution in a subsequent divorce proceeding. Landwehr v. Landwehr, 111 N.J. 491, 501, 545 A.2d 738 (1988) (declaring that "the pain and suffering that the per quod claim seeks compensation for is just as personal as the pain and suffering at issue in the primary action....").
In addition, it is significant that the spouse of an injured employee cannot assert a per quod claim within a workers' compensation proceeding. Danek, supra, 9 N.J. at 59-61, 87 A.2d 5. Because there has been no recovery in the workers' compensation proceeding which is attributable to the per quod claim, exempting a spouse's per quod recovery from the scope of the section 40 lien does not conflict with the public policy to prevent a double recovery. We hold, therefore, that an employer or its insurance carrier, who has provided workers' compensation benefits to an injured employee, may not assert a section 40 lien against a spouse's per quod recovery obtained in a third-party action.

II.
We turn now to the procedure adopted by the trial court to determine how the net settlement amount should be allocated between John and Barbara Weir. Liberty Mutual complains that the hearing was fundamentally unfair because the trial court permitted the Weirs to proceed solely on the basis of their testimony and accompanying medical records. It argues that it was deprived of its right to a trial, that the valuations arrived at by the trial court were incorrect, and that the method selected by the trial court to apply those valuations to the amount of the settlement was inconsistent with controlling precedent.
We note at the outset that certain of Liberty Mutual's concerns are understandable. The trial court concluded that the matter should be decided without a plenary hearing since to do otherwise would subvert the policy of settling matters. While it is certainly true that New Jersey has a long policy in favor of settling claims, Pascarella v. Bruck, 190 N.J.Super. 118, 125, 462 A.2d 186 (App.Div.1983); Honeywell v. Bubb, 130 N.J.Super. 130, 135, 325 A.2d 832 (App.Div. 1974), it is the Weirs who settled their claims against the third-party driver without simultaneously settling the section 40 lien with the workers' compensation carrier. As the release of December 14, 1994 indicates, the Weirs settled with full knowledge of the existence of Liberty Mutual's lien and their obligation to satisfy it. (It should be noted that Liberty Mutual does not contend that Barbara Weir, by executing this release in favor of the driver and his carrier and recognizing a joint obligation to satisfy the section 40 lien, subjected her portion of the settlement to the lien.) Liberty Mutual should not be prejudiced by the Weirs' unilateral actions.
In defense of the procedures adopted by the trial court, the Weirs point to our wrongful death statute, under which the trial court, following return of a jury verdict, is called upon to determine a fair and equitable apportionment of the verdict among the persons entitled to share in it. N.J.S.A. 2A:31-4. In that circumstance, however, we have recognized that absent a "full and complete stipulation of facts," the matter should be handled in a plenary hearing. Wolff v. Mercer Medical Center, 220 N.J.Super. 360, 366, 532 A.2d 265 (App.Div.1987). A wrongful death allocation hearing, moreover, is conducted pursuant to specific statutory authorization. There is no comparable authority for the procedure adopted in this instance.
Further, we cannot disregard the anomalous nature of the positions asserted during the hearing. The attorney representing *1237 John Weir, who, in the normal course of events would be expected to prove the nature of his client's injuries to their greatest extent, instead argued the strength of Barbara Weir's per quod claim. Indeed, Barbara Weir's attorney took no part in the proceeding at all. He did not conduct the direct examination of his client and made no summation on her behalf, either written or oral.
Under plaintiff's theory of the matter, and the procedure adopted by the trial court to this end, it was left to Liberty Mutual to establish the amount of damages a jury would have awarded to John Weir for his injuries if the matter had proceeded to trial rather than concluded by way of settlement. However, "[t]he Declaratory Judgments Act cannot be used to decide or declare the rights or status of parties upon a state of facts which are future, contingent and uncertain." Weiner v. County of Essex, 262 N.J.Super. 270, 280, 620 A.2d 1071 (Law Div.1992). It cannot be gainsaid that few things in the law are more contingent and uncertain than the amount of damages a jury may determine is appropriate and fair in a particular instance.
Liberty Mutual, moreover, was hardly in a position to establish the nature of the pain and suffering Weir experienced as a result of the accident, the treatment he underwent, and the three surgeries to which he was subjected. Nor could it be expected to establish the impact upon Weir of his permanently disabled arm or the effect, if any, of the scarring with which he was left. All of these, of course, are components of his damage claim that would have been presented to a jury in the context of a third-party action.
By his complaint, John Weir sought, in effect, two declaratory judgmentsone to determine whether a per quod award is subject to a section 40 lien and one to allocate the settlement proceeds between himself and his wife. He was not entitled however, in the context of this matter, to this second determination. Because it was to their mutual advantage to have the largest possible amount attributed to her per quod claim, there was no real adversity between the positions of John Weir and Barbara Weir. Hungerford & Terry, supra, 24 N.J.Super. at 393, 94 A.2d 540. The situation presented to the trial court was thus clearly distinguishable from that presented in Landwehr, supra, 111 N.J. at 503, 545 A.2d 738, in which the Supreme Court remanded the matter to the trial court for an allocation of settlement funds between the divorcing parties where their interests were truly adverse.
In the release executed on December 14, 1994, the Weirs recognized their obligation to negotiate a mutually acceptable compromise of Liberty Mutual's section 40 lien or satisfy it in full. There was no legal basis for them, less than a week later, to initiate proceedings to avoid that lien. When seen in context, it is difficult to escape the conclusion that the complaint was little more than a thinly-veiled attempt to circumvent Liberty Mutual's section 40 lien. While it is certainly understandable that the Weirs sought to maximize their ultimate recovery for the injuries received, we are aware of no authority supporting what occurred here.
Although we are reversing this matter, we are compelled to add an additional comment about the method adopted by the trial court to determine the Weirs' proportional shares in the settlement amount. The trial court noted its disagreement with the method we adopted in Marsella v. Monmouth Medical Center, 224 N.J.Super. 336, 342, 540 A.2d 865 (App.Div.1988), and refused to follow it. The trial court may disagree with our published decisions but it is obligated to comply with the procedures we mandate within them. Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 415, 169 A.2d 814 (1961).
Finally, because we have concluded that the Weirs were not entitled to a declaratory judgment allocating the settlement proceeds between them, we decline to address the procedures to be employed in conducting a hearing in those rare instances in which a judicial allocation would be appropriate. We are confident that the vast majority of such matters will continue to be handled in the same manner as they are nowby a mutually agreeable resolution. We express no views whether our opinion in this matter impacts upon the settlement the Weirs negotiated *1238 of their third-party claim against DeRosa.
Affirmed in part and reversed in part.
NOTES
[1] We add for the sake of completeness that that attorney is not involved in any way in the present appeal.