**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3638-17T1

DEBRA SANSONE,

     Petitioner-Appellant,

v.

VILLAGE SUPERMARKET, INC.,

     Respondent-Respondent.

_____

> Argued January 31, 2019 – Decided May 2, 2019
>
> Before Judges Simonelli and DeAlmeida.
>
> On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2009-33752.
>
> Andrew P. Gould argued the cause for appellant (Pfeiffer & Bruno, PC, attorneys; James L. Pfeiffer, on the brief).
>
> Thomas E. Miller argued the cause for respondent (Law Offices of Styliades and Jackson, attorneys; Thomas E. Miller, on the brief).

PER CURIAM

Petitioner Debra Sansone appeals from the March 15, 2018 order of the Division of Workers' Compensation (Division) enforcing a statutory lien in favor of Liberty Mutual Insurance Company (Liberty Mutual) against the proceeds of her settlement with third-party tortfeasors. We affirm.

I.

Sansone was employed by respondent Village Supermarket, Inc. (Village) and assigned to work at a supermarket. On April 1, 2006, while at work, Sansone slipped and fell on an object on the floor. She filed a workers' compensation claim alleging the accident injured her right foot. When the accident took place, Village was insured by New Jersey Manufacturer's Insurance Group (NJM). Sansone received treatment and was diagnosed with Reflex Sympathetic Dystrophy/Complex Regional Pain Syndrome (RSD/CRPS) in her right lower extremity as a result of the accident. She returned to work, but continued to receive medical treatment.

On December 23, 2007, Sansone was injured for a second time at work. On that day, an employee of Same Day Delivery Service, Inc. (Same Day) who was delivering items to the supermarket accidentally pushed a metal cart into Sansone's right foot and ankle, the same area injured in the first accident.

Sansone filed a workers' compensation claim for the second accident, alleging injuries to her right ankle and leg, torso, back, and left knee. When this accident took place, Village was insured by Liberty Mutual. Sansone was diagnosed with RSD/CRPS in the right foot and other areas of her body from the second accident and received ongoing medical treatment.

On December 17, 2009, Sansone and her spouse filed a complaint in the United States District Court against Same Day and the employee involved in the second accident. Sansone alleged the employee's negligent acts caused injuries to her ankle, foot, and leg. She sought recovery for, among other things, past and continuing expenses for treatment of her injuries and lost time from work. Sansone's spouse alleged per quod claims, seeking damages for loss of consortium and related damages.

On April 6, 2016, while the federal action was pending, Sansone settled both of her workers' compensation claims. She resolved the claim from the first accident for $21,000, for which NJM was responsible. In addition, a workers' compensation judge entered an order for total permanent disability as a result of the second accident. The order assigned fifty-five percent responsibility for the permanent disability to the employer, for which Liberty Mutual is financially responsible, and forty-five percent responsibility for the permanent disability to

the Second Injury Fund (Fund). Liberty Mutual was found responsible for all future medical expenses arising from Sansone's RSD/CRPS.

In May 2017, Sansone and her spouse settled the federal court action for $1 million, the limit of the third-parties' insurance policy. Although Sansone and her spouse were aware of Liberty Mutual's statutory lien, pursuant to N.J.S.A. 34:15-40 (section 40), against Sansone's recovery from third-party tortfeasors responsible for the second accident, they did not apportion the settlement proceeds between Sansone's claims and those of her spouse. The record does not contain a written settlement agreement relating to the federal court matter.

In August 2017, Liberty Mutual filed a motion with the Division to enforce its statutory lien against Sansone's third-party recovery. At the time, Liberty Mutual had a lien of $1,139,571.17, including expenses for Sansone's continuing medical treatment, and alleged that the entire amount recovered by Sansone was subject to the lien.[1]

Sansone opposed the application. She argued Liberty Mutual is not entitled to a lien for all of the expenses associated with her ongoing treatment

---

[1] At the time of Liberty Mutual's motion, Sansone's counsel, after deducting attorney's fees, had placed the $675,198.36 balance of the settlement proceeds in a trust account to await resolution of Liberty Mutual's motion.

A-3638-17T1

because most of the treatment she received for RSD/CRPS is consistent with the natural progression of the condition as a result of her first accident, for which Liberty Mutual is not responsible, and would have occurred regardless of the second accident. Sansone's argument is directly contrary to the argument she made in her second compensation claim, in which she alleged serious medical injuries from the second accident. In addition, Sansone argued Liberty Mutual is not entitled to a lien against the portion of the third-party settlement proceeds attributable to her spouse's recovery on his per quod claims. She asked the judge of compensation to hold a hearing to determine the extent of Liberty Mutual's lien or order the parties into arbitration to resolve that issue.

On March 15, 2018, the judge of compensation issued an oral opinion denying Sansone's request for a hearing and enforcing Liberty Mutual's lien against the entire balance of Sansone's recovery in the federal court action. The judge concluded that the order resolving Sansone's second compensation claim finds she is totally permanently disabled as a result of the second accident and Liberty Mutual is responsible for all of her future medical expenses associated with her RSD/CRPS. The court also noted that the expert report on which Sansone relied in opposition to Liberty Mutual's motion, and which attributed the RSD/CRPS largely to the first accident, was presented by the third-party

defendants in the federal court action. The report contradicts the position taken by Sansone in that action, in which she sought to attribute her damages to the negligence of the third-party defendants. The judge found that after Sansone settled the third-party claims for $1 million, "it's difficult for me to accept that you can take the flip argument now when it comes time to pay the lien[.]" In addition, the judge noted that "Liberty Mutual went on to pay hundreds of thousands of dollars in medical treatment on a continuing basis for all the things that [Sansone] alleged . . . were related to her [second] accident." The judge found the ongoing medical treatment provided by Liberty Mutual "was, in fact, related to" the second accident and, therefore, should be subject to a lien in favor of Liberty Mutual.

In addition, the judge concluded that while the spouse's per quod recovery is not subject to Liberty Mutual's lien, the parties did not attribute any of the settlement proceeds in the third-party action to his claims. Finding that "there is nothing before me to even justify or consider what an appropriate allocation would be," the judge of compensation concluded he was unable to "assess anything to a per quod claim, consortium claim." The judge also found that a hearing was not necessary to determine the amount of Liberty Mutual's lien because "the lien far exceeds funds available to reimburse it" from the

settlement.  A March 15, 2018 order memorializes the judge of compensation's decision.

This appeal followed.  On April 27, 2018, the judge of compensation issued a written amplification of his decision.  R. 2:5-1(b).  In that decision, the judge noted that the same counsel represented Sansone in both the federal court action and the workers' compensation proceedings and, despite having "full knowledge of the pending workers' compensation" claims, "made no effort to allocate the settlement proceeds" from the third-parties.  The judge also found:

> In opposing the motion to enforce the section 40 lien, [Sansone] provides no facts or evidence to support an allocation of the third[-]party settlement other than to say [Sansone's] husband had a per quod claim.  The details of the settlement, a release, any relevant discovery in the third[-]party suit, or any indication of the husband's potential damages, were not before me.  Any attempt to allocat[e] those settlement proceeds should have been conducted in the [District] Court with the involvement of the parties in that case . . . [and] notice could have been given to the workers' compensation carrier.
>
> It was not for this court to re-litigate or arbitrate the personal injury matter when the lien was clearly involved.  If the husband['s] rights needed to be protected, it should have been addressed at the time of settlement.  I have no jurisdiction over the [District] Court case.

Before us, Sansone argues that the judge of compensation's finding Liberty Mutual is responsible for all medical treatment she received for RSD/CRPS is erroneous. In addition, she argues the judge of compensation erred as a matter of law by failing to hold a hearing to allocate a portion of the third-party settlement proceeds to the spouse's per quod claim. According to Sansone, it is undisputed that Liberty Mutual does not have a statutory lien against the spouse's recovery and by failing to make an allocation, the judge of compensation effectively reduced the spouse's recovery to zero.

## II.

"A judge of compensation's factual findings are entitled to substantial deference." Bellino v. Verizon Wireless, 435 N.J. Super. 85, 94 (App. Div. 2014). Our "review is limited to 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole[.]'" Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). However, this court owes "no particular deference to the judge of compensation's interpretation of the law." Sexton v. Cty. of Cumberland, 404 N.J. Super. 542, 548 (App. Div. 2009).

Section 40 creates a statutory compensation lien that "attaches to 'any sum' recovered by the injured worker from a third-party, without regard to such equitable considerations as whether the worker has been fully compensated." Lambert v. Travelers Indem. Co. of Am., 447 N.J. Super. 61, 73 (App. Div. 2016) (quoting Primus v. Alfred Sanzari Enters., 372 N.J. Super. 392, 400 (App. Div. 2004)). The purpose of the statute is to make clear that "[a]n injured employee is entitled to be compensated for injuries sustained but is not entitled to be compensated twice for those injuries." Weir v. Mkt. Transition Facility of N.J., 318 N.J. Super. 436, 444 (App. Div. 1999). "The 'double recovery' that the Legislature intended to prevent under section 40 is payment from two different sources for the same injury, and not payment in excess of the worker's 'actual damages.'" Frazier v. N.J. Mfrs. Ins. Co., 142 N.J. 590, 603 (1995). "Our public policy against a double recovery is so strong that a section 40 lien is valid even if the recovery in the third-party action is insufficient to compensate the injured employee fully for all injuries received." Weir, 318 N.J. Super. at 444.

We begin our analysis with Sansone's argument that Liberty Mutual is not entitled to a lien for all of the funds it expended for her medical treatment. After a careful review of the record, we conclude that the judge of compensation's interpretation of the April 6, 2016 order resolving Sansone's second

9                                                                      A-3638-17T1

compensation claim is supported by sufficient credible evidence. The order finds Liberty Mutual fifty-five percent responsible for Sansone's total permanent disability "due to the combined effects of the petitioner's previous disabilities and the last compensable accident" and establishes weekly payments to be made from Liberty Mutual to Sansone. The order also directs Liberty Mutual to furnish Sansone with ongoing medical treatment by two designated treating physicians. There is no suggestion in the order that NJM is responsible for any of Sansone's continuing medical expenses, or that her continuing treatment is attributable to the first accident.[2]

In addition, the April 6, 2016 order memorializing the settlement of Sansone's first compensation claim, for which NJM is responsible, states that the matter is settled for $21,000, which NJM is to pay to Liberty Mutual. The order does not provide that NJM will pay any portion of Sansone's ongoing medical expenses.

We note, as did the judge of compensation, that the parties proceeded with the understanding that Liberty Mutual was responsible for Sansone's ongoing medical treatment. Sansone accepted hundreds of thousands of dollars in

---

[2] Because the Fund was found to be forty-five percent responsible for Sansone's disability, the order directs the Fund to make additional weekly payments to her. The Fund is not responsible for ongoing medical treatment.

A-3638-17T1

medical treatment from Liberty Mutual while alleging in her second compensation claim and her third-party suit that her medical treatment was necessitated by the injuries she incurred in the second accident. There is no evidence in the record that at any point prior to Sansone's decision to accept a $1 million settlement from the third-parties' insurer she took the position that her ongoing treatment was largely attributable to her first accident.

We also affirm the judge of compensation's order denying Sansone's request for a hearing to determine the portion of the settlement proceeds attributable to her husband's per quod claims. We are guided in our analysis by our holding in Weir, where we examined facts substantively similar to those presently before the court. In that case, an employee was injured while at work by the negligent acts of a third-party. Id. at 439. He received workers' compensation benefits and sued the third-party for damages. Id. at 440. The employee's spouse asserted a per quod claim in the third-party action. Ibid. The employee and his spouse settled their claims "for a lump sum amount that made no distinction between" the claims of the employee and those of his spouse. Ibid. Shortly thereafter, the employee filed suit in the Superior Court seeking a declaratory judgment that the workers' compensation insurance company did not have a section 40 lien on the spouse's recovery on her per quod claim and

allocating the settlement amount between himself and his spouse. Ibid. The trial court held a hearing, determined the "economic value" of the employee's and spouse's claims, concluded that the spouse's claim was worth twenty percent of the employee's claim, and applied that percentage to the settlement proceeds to determine the amount attributable to the per quod claim. Id. at 441-42.

We concluded that the employee was entitled to a declaratory judgment with respect to whether the insurance carrier's lien extended to his spouse's recovery on her per quod claim. Id. at 442. We held "that an employer or its insurance carrier, who has provided workers' compensation benefits to an injured employee, may not assert a section 40 lien against a spouse's per quod recovery obtained in a third-party action." Id. at 445. We based our conclusion, in part, on our observation that "it is significant that the spouse of an injured employee cannot assert a per quod claim within a workers' compensation proceeding." Ibid.

However, we reversed the trial court's issuance of a declaratory judgment allocating the settlement proceeds between the employee's claims and those of his spouse. Id. at 442. We determined that declaratory relief was not appropriate for a number of reasons. First, we noted that the employee and his spouse "settled with full knowledge of the existence of [the insurance carrier's] lien and

their obligation to satisfy it[,]" yet "settled their claims against the third-party . . . without simultaneously settling the section 40 lien[.]" Id. at 446. Second, we acknowledged "the anomalous nature of the positions asserted" by the employee and his spouse at the declaratory judgment hearing, given that the spouse's attorney, who "would be expected to prove the nature of his client's injuries to their greatest extent, instead argued the strength of [the spouse's] per quod claim." Ibid. Third, we noted that the compensation insurance carrier "was hardly in a position to establish the nature of the pain and suffering [the employee] experienced as a result of the accident" and his subsequent treatment. Id. at 447. Finally, we observed that "it is difficult to escape the conclusion that the [declaratory judgment] complaint was little more than a thinly-veiled attempt to circumvent" the section 40 lien of the insurance carrier who paid for the employee's medical treatments. Id. at 448.

Although we held that a declaratory judgment action was not available to the employee to allocate the proceeds of the settlement of a third-party action, we did not decide how such an allocation should be effectuated. We held

> because we have concluded that the [employee and his spouse] were not entitled to a declaratory judgment allocating the settlement proceeds between them, we decline to address the procedures to be employed in conducting a hearing in those rare instances in which a judicial allocation would be appropriate. We are

13

> confident that the vast majority of such matters will continue to be handled in the same manner as they are now – by a mutually agreeable resolution.
>
> [Ibid.]

Here, the request for allocation was presented not through a declaratory judgment complaint, but in opposition to an insurance carrier's motion to enforce a section 40 lien. Despite the difference in procedure, the concerns that underpinned our holding in Weir are present here. Sansone and her spouse, aware of their obligation to satisfy Liberty Mutual's lien and represented by the same counsel in their third-party action as appeared on behalf of Sansone before the Division, settled their third-party claims without allocating the settlement proceeds. Although aware of Liberty Mutual's interest in the third-party action, the Sansones did not involve the carrier in their settlement discussions or attempt to settle their section 40 lien along with their third-party claims.

In addition, Sansone and her spouse were in an anomalous position before the judge of compensation. Although Sansone filed a compensation claim and a third-party action alleging that her medical condition, and the need for ongoing treatment, was caused by the second accident, once she and her spouse secured a $1 million settlement from the third-parties, they attempted to attribute the bulk of Sansone's ongoing medical expenses to her first accident. This unusual

situation is highlighted by the fact that in support of her argument in opposition to the motion to enforce the lien, Sansone relied on the report of the expert retained by the <u>defendants</u> in the third-party action. In addition, as was the case in <u>Weir</u>, the Sansones' failure to include Liberty Mutual in the settlement discussions in the third-party action is indicative of a conscious effort to attribute as much damage to the second accident as possible in the federal action, while preserving the opportunity to take the exact opposite position before the judge of compensation once the federal action was settled.

We also note that the judge of compensation was not well equipped, or statutorily authorized, to quantify the value of the spouse's per quod claims. As indicated above, it has long been established that such claims cannot be asserted as part of a compensation claim. <u>Danek v. Hommer</u>, 9 N.J. 56, 59-61 (1952). Judges of compensation, therefore, do not have expertise in the area of derivative tort claims. Moreover, it is not entirely clear what Sansone requested the judge of compensation to determine. Rather than deciding what the spouse's per quod claim was worth, it appears that the more appropriate inquiry would have been the amount for which the spouse's per quod claim was settled. After all, it is reasonable to assume that settlement of all of the Sansones' claims for the limit of the third-parties' insurance coverage is an acknowledgement the

A-3638-17T1

Sansones made a colorable argument that their combined claims exceeded that amount. It is entirely possible that the third-party defendants were convinced that Sansone's claims alone, without consideration of her spouse's per quod claims, exceeded the policy limit. In that instance, the settlement proceeds might reasonably be viewed as attributable entirely to Sansone's claims. The process for determining the value attributed to the Sansones' third-party claims in the settlement would surely be fraught with complexities and involve legal issues and evidence beyond those appropriately before a judge of compensation.

Sansone and her spouse were not without options for protecting the per quod recovery. They could have executed separate settlement agreements with the third-parties or allocated the settlement proceeds among the claims in a single settlement agreement. More importantly, and perhaps most practically, the Sansones could have involved Liberty Mutual in the settlement discussions with the third-parties and addressed the carrier's section 40 lien at that time.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3638-17T1