**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1336
_____

ROSETTA DASARO, Individually, and
as the Administratrix of the Estate of Anthony Dasaro, Deceased,
Appellant

v.

COUNTY OF MONMOUTH; MONMOUTH COUNTY CORRECTIONAL
INSTITUTION; CORRECT CARE SOLUTIONS LLC; JOHN DOES 1-10, first and last
name being fictitious and representing unnamed Police Officers and/or Corrections
Officers, individually and in their official capacity as Corrections Officers;
MARTIN MARINO; PAULINE TYAS; KABEERUDDIN HASHINI;
IBIRONKE MACAULAY; ASHLEY LABARBERA; ALICIA CAPUTO-SMITH

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:14-cv-07773)
District Judge:  Honorable Peter G. Sheridan

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 22, 2020

Before:  AMBRO, PORTER and SCIRICA, <u>Circuit Judges</u>

(Opinion filed October 26, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Rosetta Dasaro ("Appellant") appeals pro se from the District Court's order granting summary judgment against her in this civil action stemming from the death of her estranged husband, Anthony Dasaro ("Decedent"), who committed suicide while detained at the Monmouth County Correctional Institution ("MCCI"). For the reasons that follow, we will affirm the District Court's order.

I.

On April 28, 2014, police in Manalapan Township, New Jersey, arrested Decedent, a 62-year-old retired New York City police officer, after he allegedly attempted to harm Appellant by driving over her foot while he backed out of a parking space. A New Jersey Municipal Court judge set Decedent's bail at $2500 and ordered that Decedent be detained at MCCI until his next scheduled court appearance. MCCI contracts with Correct Care Solutions, LLC ("CCS"), to provide medical and mental health care to MCCI's inmates.

As part of the booking process upon Decedent's arrival at MCCI on April 28, 2014, he was evaluated by Ashley LaBarbera, a CCS licensed practical nurse, and Dr. Alicia Caputo-Smith, a clinical psychologist who served as CCS's Director of Mental Health at MCCI. During these evaluations, Decedent indicated that he suffered from post-traumatic stress disorder, and that he was taking valium.[1] Although Decedent was

---

[1] Decedent also indicated that, in 1993, at which point he had retired and was having family difficulties, he was treated by a psychiatrist, who prescribed him an anti-depressant. Decedent reported that he took that medication for a few months.

2

initially upset during these evaluations — Dr. Caputo-Smith indicated during her deposition testimony that it was common for inmates to be distressed during booking — Decedent collected himself and was cooperative. During Dr. Caputo-Smith's evaluation of Decedent, she concluded, after balancing the risk factors for suicide (such as his incarceration and his being estranged from his wife and adult children) with the "protective" factors (such as his Catholic belief against committing suicide and his desire to reconnect with his family), that he did not pose a threat for committing suicide.

Decedent was also screened by MCCI Corrections Officer Rick Lombardo to identify any special medical needs and determine Decedent's custody classification.[2] During that screening, Decedent denied having any mental or medical health problems, drug or alcohol problems, or thoughts of suicide. Because of Decedent's use of valium, LaBarbera had recommended that he be placed in MCCI's "detox housing" — "an open dormitory setting, where inmates are under twenty-four[-]hour supervision." (Dist. Ct. Mem. entered Feb. 21, 2018, at 2 [hereinafter Dist. Ct. Mem.].) However, at Decedent's request, he was instead placed in protective custody — where he was assigned to an individual cell — in view of his having been a police officer.

Between the evening of April 28, 2014, and the morning of May 3, 2014, Decedent was evaluated 12 times by CCS staff for suicidal tendencies. The paperwork documenting those evaluations indicates that, during each evaluation, Decedent (1) did not express thoughts about killing himself, (2) did not have a suicide plan or suicide

---

[2] At the time of his deposition, Lombardo had risen to the rank of Sergeant.

instrument in his possession, and (3) did not express feelings of helplessness or hopelessness. Decedent was also evaluated by CCS's mental health department during rounds on May 1, 2014. The report memorializing that evaluation indicates that Decedent was cooperative and calm, and that his mood and affect were normal.

Around 1 p.m. on May 3, 2014, an MCCI corrections officer found Decedent unresponsive in his cell with a bedsheet tied around his neck. An autopsy ruled Decedent's death a suicide by hanging. Later that year, Appellant, acting individually and as the administratrix of Decedent's estate, filed a counseled complaint in the District Court. Appellant subsequently amended that complaint twice; her second amended complaint ("SAC") is the operative pleading here. The SAC was brought against CCS, several CCS medical and mental health providers (including Dr. Caputo-Smith and LaBarbera), MCCI, Monmouth County, and ten John Doe defendants. The SAC raised negligence claims under New Jersey law and alleged that the defendants had violated Decedent's constitutional rights.[3]

After discovery, MCCI and Monmouth County (hereinafter collectively referred to as "the Monmouth Defendants") jointly moved for summary judgment, as did CCS and the CCS medical and mental health providers (hereinafter collectively referred to as "the

_____

[3] The SAC also included a claim for loss of consortium brought by Appellant on her own behalf. Because (1) that claim is derivative of one or more of the other claims in the SAC and (2) we will affirm the District Court's grant of summary judgment against Appellant as to those other claims (for the reasons discussed in Section III, infra), we need not separately analyze the loss-of-consortium claim. See, e.g., Weir v. Mkt. Transition Facility of N.J., 723 A.2d 1231, 1236 (N.J. Super. Ct. App. Div. 1999) ("The derivative claim can rise no higher than the personal injury claim of the other spouse." (quoting Tichenor v. Santillo, 527 A.2d 78, 82 (N.J. Super. Ct. App. Div. 1987))).

CCS Defendants"). Appellant, meanwhile, cross-moved for summary judgment. On February 21, 2018, the District Court granted the defendants' motions, denied Appellant's cross-motion, and directed the District Court Clerk to close the case. In doing so, the District Court explained that Appellant's negligence claims could not proceed because she had not complied with N.J. Stat. Ann. § 2A:53A-27's affidavit of merit ("AOM") requirement or submitted expert testimony regarding whether the defendants had deviated from the applicable standard of care. As for Appellant's constitutional claims, the District Court explained that those claims (1) could not proceed against MCCI because it is not a "person" under 42 U.S.C. § 1983, and (2) failed on the merits as to the remaining defendants.

Several months after the District Court entered its summary-judgment decision, Appellant, who was no longer proceeding with counsel, moved for reconsideration. The District Court denied that motion, and then Appellant filed a notice of appeal. In December 2018, we dismissed that appeal for lack of jurisdiction, indicating that the appeal was premature because the District Court had not adjudicated the defendants' cross-claims for contribution and indemnification. (See Dec. 12, 2018 Order entered in C.A. No. 18-2983 (citing, inter alia, Owens v. Aetna Life & Cas. Co., 654 F.2d 218, 220 n.2 (3d Cir. 1981)).) We explained that "[n]othing in our [dismissal] order . . . prevents Appellant from filing a new notice of appeal once the District Court enters a final decision in this case." (Id. at 2.)

Thereafter, the defendants jointly filed in the District Court a stipulation voluntarily dismissing their respective cross-claims. On January 29, 2019, the District

5

Court approved that voluntary dismissal. A week later, Appellant filed the appeal that is now before us.[4]

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[5] We review the District Court's summary-judgment decision under a plenary standard. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017).[6] Summary judgment is appropriate when the movants "show[] that there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in h[er] favor in determining whether a genuine factual question exists," summary judgment should be granted "unless there is sufficient

---

[4] The Monmouth Defendants and the CCS Defendants have each moved to supplement the limited appendix filed by Appellant. The Monmouth Defendants' motion to supplement is granted. The CCS Defendants' motion to supplement is granted in part; it is denied to the extent that it includes documents from the record that were included in Appellant's appendix. The CCS Defendants' motion to seal Volume II of its supplemental appendix is denied, for they have failed to meet the burden for that relief, see In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001), particularly given that the vast majority, if not all, of the material contained in Volume II is publicly available on the District Court's docket (it does not appear that the CCS Defendants or any other party moved the District Court to seal this material).

[5] The Monmouth Defendants and the CCS Defendants argue that this appeal is untimely because it was filed more than 30 days after the District Court entered its February 21, 2018 summary-judgment order. But this argument lacks merit, for the 30-day appeal period under Federal Rule of Appellate Procedure 4(a)(1)(A) did not begin to run until the District Court disposed of the defendants' cross-claims on January 29, 2019. See Owens, 654 F.2d at 220 n.2. Because Appellant filed her notice of appeal within 30 days after the District Court's January 29, 2019 order, this appeal is timely.

[6] In this appeal, Appellant does not challenge the District Court's August 2018 order denying her motion to reconsider that court's summary-judgment decision.

evidence for a jury to reasonably find for the nonmovant." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011) (internal quotation marks omitted).

### III.[7]

In her brief, Appellant does not discuss her constitutional claims, and while she does discuss the issue of negligence, she fails to address the bases on which the District Court resolved her negligence claims (i.e., her failure to file an AOM or submit expert testimony). Furthermore, on four occasions during the course of this appeal, Appellant did not respond to the Clerk's directive to file briefing on certain issues.[8]

It is a "well-established rule that the failure to identify or argue an issue in an opening brief constitutes waiver of that issue on appeal." United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005); see Emerson v. Thiel Coll., 296 F.3d 184, 190 n.5 (3d Cir. 2002) (per curiam) (applying this rule to a pro se appeal). Because Appellant failed to brief any of her constitutional claims, we deem those claims forfeited. As for her

---

[7] As noted above, Appellant brought this case individually and as administratrix of Decedent's estate. In Murray ex rel. Purnell v. City of Philadelphia, 901 F.3d 169, 170 (3d Cir. 2018), we held "that a non-attorney who is not a beneficiary of the estate may not conduct a case pro se on behalf of the estate." Furthermore, courts have held that a non-attorney administrator cannot litigate a case pro se unless he or she is the *only* beneficiary. See id. at 171 n.3 (collecting cases). Here, it is not clear to what extent Appellant is a beneficiary of Decedent's estate. But we need not resolve this issue to decide this appeal. Regardless of whether Appellant may proceed pro se on behalf of the estate in this appeal (in addition to proceeding pro se on her own behalf), we conclude that, for the reasons discussed in this section, the District Court's summary-judgment order should be affirmed.

[8] Two of the Clerk's four briefing-related orders concerned the question of appellate jurisdiction, while the other two orders concerned a video exhibit that Appellant submitted to this Court.

7

negligence claims, although her brief made no mention of the AOM and expert-testimony requirements, we liberally construe her brief's discussion of the negligence claims as arguing that the "common knowledge" exception to the AOM and expert-testimony requirements should apply in this case. See Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011) (noting the obligation to liberally construe a pro se litigant's filings). However, as explained below, we find that argument unpersuasive.

Under New Jersey law, the "common knowledge" exception applies only in the "exceptionally rare" case in which "an expert is not needed to demonstrate that a defendant professional breached some duty of care [because] the carelessness of the defendant is readily apparent to anyone of average intelligence." Cowley v. Virtua Health Sys., 230 A.3d 265, 274 (N.J. 2020) (internal quotation marks omitted). Here, Appellant's negligence claims revolved around the contention "that Defendants should have identified that Decedent posed a risk of suicide and should have been placed in detox housing" (notwithstanding Decedent's request to instead be placed in protective custody due to his law enforcement background). (Dist. Ct. Mem. 11.) But as the District Court explained, "this is not a case where Defendants failed to evaluate Decedent altogether, or that he was in any other way neglected, such that [one] could reasonably infer negligence." (Id.) In short, we agree with the District Court that the "common knowledge" exception does not apply to this case because it is not "readily apparent to anyone of average intelligence" that there was a breach of the duty of care. Since this exception does not apply here, and because Appellant does not otherwise challenge the grounds on which the District Court resolved her negligence claims, we see no reason to

8

disturb the District Court's decision to grant summary judgment against her as to those claims.

In view of the above, we will affirm the District Court's February 21, 2018 order granting summary judgment against Appellant.[9]

_____

[9] Appellant's requests for leave to file a video exhibit are denied as unnecessary, as that exhibit is already part of the District Court record.